Commonwealth *v.* Atkins, Appellant.

Submitted December 2, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Barry H. Denker,* and *Shuman, Denker & Land,* for appellant.

*Stewart J. Greenleaf* and *J. David Bean,* Assistant District Attorneys, *William T. Nicholas,* First Assistant District Attorney, and *Milton O. Moss,* District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., March 31, 1975:

Appellant contends that she was not afforded due process of law because the trial judge's refusal to grant her request for a continuance compelled her to act as her own attorney.

The appellant was arrested on November 1, 1973, and charged with two counts of retail theft and one count of criminal conspiracy. A preliminary hearing was held on November 8, 1973, at which the presiding Justice of the Peace determined that a prima facie case had been established. The docket lists Daniel L. Quinlan, Esquire, as defense counsel at the preliminary hearing. On January 14, 1974, the Grand Jury returned True Bills on all three counts. At a subsequent hearing the appellant was asked if she was represented by counsel. The appellant replied that Mr. Quinlan was her attorney, but that he was not present. The court instructed the sheriff to ascertain whether or not Mr. Quinlan would act as the appellant's attorney. The following colloquy appears of record: "THE COURT: Yes, but one lady gave Mr. Quinlan's name and I wanted to get that resolved. "Mr. MITTMAN: Mr. Quinlan, from what I gather, has indicated that he does not represent her. "THE COURT: Did the sheriff talk to him? "MR. CAPUTO: I talked to his secretary and she said she has no knowledge of this name at all . . .[1] "THE COURT: Then Mr. Quinlan does not represent you. Do you understand that? "MRS. ATKINS: Yes, I do."

On May 14, 1974, an application to suppress evidence was made on behalf of the appellant. The attorney for the applicant was William I. English, Jr., Esquire. Apparently, Mr. English was associated with Mr. Quinlan's office.

The motion to suppress was denied on Friday, May 31, 1974, and the trial listed for the following Monday, June 3, 1974. Mr. English represented the appellant at the suppression hearing. When the court opened on June

---

1. The appellant also used the name of Alma Bey.

3, Mr. English informed the trial judge that his client desired a continuance in order to obtain the services of another attorney. The court responded: "Let us put it on the record. It is going to be refused.[2] They can go to trial without you. You can sit right alongside if they [the appellant and her co-defendant] do not want you, and they can try their own case." The following colloquy between the court and the appellant ensued: "THE COURT: All right. This case was listed for trial, and you had an opportunity to employ a lawyer. You did, and we are not going to continue the case ... If you want to discharge Mr. English, you may do so, that is your privilege. I am going to ask him to stay in the courtroom, however, and if you have any question to ask while the case is proceeding, he will be available to you. "Now, do you wish to be tried by a jury, or do you wish to be tried by a Judge without a jury? "DEFENDANT ATKINS: I don't want to be tried at all. "THE COURT: You are going to be tried. "DEFENDANT ATKINS: I'm asking to have a paid lawyer. I obtained Mr. Dan Quinlan, right? I had wanted to obtain Mr. Dan Quinlan, but Dan Quinlan's leg is broke, he is ill, so he had told me to get Mr. English which is an assistant, right? "So, now, this was just for the preliminary hearing, I mean, for the suppression of the evidence case. "THE COURT: Miss Atkins, this case was called to trial, and prior to the trial there was a motion scheduled. A motion had been filed some months back, and that motion was heard before the trial, so if you did not want Mr. English, you could have stated to Mr. English, and you could have told the Court that you wished another lawyer.[3] DEFENDANT ATKINS: But see, I didn't understand this part. "THE COURT: You understand it—"DEFENDANT ATKINS: According to

---

2. We are not unsympathetic to the trial court's desire not to additionally burden an already over-burdened system.

3. The only motion prior to trial appearing of record is the May 16, 1974 motion to suppress evidence.

you—what do you mean I understand? I have my civil rights. I have the right to my own lawyer, right? "THE COURT: We are going to proceed with the trial right now. Now, do you want a jury or don't you want a jury? DEFENDANT ATKINS: I don't want either." The District Attorney then asked Mr. English whether he had been retained by the appellant. Mr. English answered affirmatively, adding that Mr. Quinlan said he "didn't want to take the case." The Court instructed Mr. English to remain in the courtroom to advise the defendants if they so desired. The case proceeded to trial and the appellant, acting as her own attorney, was found guilty by a jury.

Both the United States Supreme Court and the Pennsylvania Supreme Court have consistently ruled that legal counsel "is an absolute necessity in a criminal trial ..." *Commonwealth v. Kennedy*, 451 Pa. 483, 488, 305 A. 2d 890 (1973). *See also Argersinger v. Hamlin*, 407 U.S. 25 (1972); *Gideon v. Wainwright*, 372 U.S. 335 (1963). The right to counsel is a personal right and is waivable, but "... for the waiver to be valid and effective, it must be the competent and intelligent act of the accused: *Johnson v. Zerbst*, 304 U.S. 458, 58 S. Ct. 1019 (1938); *Moore v. Michigan*, 355 U.S. 155, 78 S. Ct. 191 (1957)." *Commonwealth ex rel. McCray v. Rundle*, 415 Pa. 65, 69, 202 A. 2d 303, 305 (1964). *See also Argersinger v. Hamlin*, supra; *Commonwealth ex rel. O'Lock v. Rundle*, 415 Pa. 515, 204 A. 2d 439 (1964). The record in the instant case reveals that the appellant's decision to proceed to trial without the assistance of counsel was not voluntary. The appellant wanted to be represented by counsel, but not by Mr. English. When her request for a continuance was denied, she was left little choice but to proceed *pro se*. Moreover, her objections to the court's ruling were definitively expressed.

As in *Moore v. Jamieson*, 451 Pa. 299, 306 A. 2d 283 (1973), "[w]e must begin with the unquestioned premise

that . . . 'the accused regardless of financial status is guaranteed the right to the assistance of counsel, *either counsel of his own choosing,* or if indigent or otherwise unable to secure counsel, counsel assigned by the court. *Gideon v. Wainright,* [372 U.S. 335 (1963)].' (Emphasis added). *Commonwealth ex rel. Goodfellow v. Rundle,* 415 Pa. 528, 533, 204 A. 2d 446, 448 (1964). The right to counsel of one's own choosing is particularly significant because an individual facing criminal sanctions should have great confidence in his attorney. Cf. *Commonwealth v. Velasquez,* 437 Pa. 262, 265, 263 A. 2d 351, 353-354 (1970)." 451 Pa. at 307-308, 306 A. 2d at 288 (footnote omitted). Our state Constitution also provides that a defendant has the "right to choose at his own cost and expense any lawyer he may desire: Constitution of Pennsylvania, Art. I, §9, . . ." *Commonwealth v. Novak,* 395 Pa. 199, 213, 150 A. 2d 102, 109 (1959), cert. den. 361 U.S. 882, rehearing den. 361 U.S. 926. The Federal courts as well have held that the right to obtain the assistance of counsel of one's own choosing is a necessary corollary to the Constitutional right to counsel. *Chandler v. Fretag,* 348 U.S. 3 (1954) ; *United States ex rel. Carey v. Rundle,* 409 F. 2d 1210 (3d Cir. 1969).

The right to choose a particular counsel, however, is not absolute. Thus, the desirability of permitting a defendant additional time to obtain private counsel of his choice must be weighed against the public need for the efficient and effective administration of justice. *Commonwealth v. Simpson,* 222 Pa. Superior Ct. 296, 294 A. 2d 805 (1972). The matter of continuance is traditionally one within the discretion of the trial judge, and no prophylactic rule exists for determining when a denial of a continuance amounts to a violation of due process. Each case must be decided by balancing the competing interests, giving due regard to the facts presented: ". . . it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is

compelled to defend without counsel . . . Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Ungar v. Sarafite,* 376 U.S. 575, 589 (1964) (citations omitted).

The instant case is factually distinguishable from those decisions holding that the denial of a continuance did not result in a deprivation of due process. For example, in *Commonwealth v. Simpson,* supra, the defendant was arrested on November 7, 1970. On May 5, 1971, the case was scheduled for trial on June 3, 1971. Throughout this period, the defendant was represented by a voluntary defender. When the case was called, the defendant requested a continuance so that he could secure private counsel. The trial judge continued the case until July 8, 1971, when the defendant again asked for an additional delay. Our Court held that the trial judge did not abuse his discretion, in light of the facts that the defendant had been given more than one month in which to obtain private counsel, and at the end of this period was unable to indicate how much additional time would be required.[4]

---

4. *United States ex rel. Carey v. Rundle,* supra, is also factually inapposite. There, the defendant was represented by private counsel at the preliminary hearing on June 4, 1966. At trial on August 29, the defendant stated that he was without counsel, and his former attorney stated in court that he no longer represented the defendant. The court continued the trial for thirty days to enable the defendant to obtain the counsel of his choice. On September 28, the defendant was still without counsel, and the court granted him another one-day extension. On September 30, an attorney stated he would be able to act on behalf of the defendant if the trial was delayed another five days. The Third Circuit held that there was no abuse of discretion in denying this request. More-

In the present case, there was only *one* request for a continuance.

The Court in *Commonwealth v. Novak,* supra, held that the defendant's constitutional rights were not abridged by the trial court's refusal to allow his private counsel to withdraw: "Defendant had a period of *almost two years* in which to procure counsel to his liking and in whom he could have confidence. He was never denied the opportunity to exercise this right. Defendant knew when his case would be called for trial. He could not wait until the very day of his trial to choose another counsel." 395 Pa. at 214, 150 A. 2d at 110. (Emphasis added). *Commonwealth v. Minifield,* 225 Pa. Superior Ct. 149, 310 A. 2d 366 (1973), is similar to *Novak.* The defendant had been represented by the Philadelphia Voluntary Defender Association from the time of his arrest in November, 1971. On July 6, 1971, the defendant was notified that he had received a workmen's compensation award in the amount of $1,750. After the defendant's motions to suppress all identifications were denied on July 26, 1971, the voluntary defender informed the trial judge that the defendant wished to retain private counsel. This Court reiterated the general proposition that "where a defendant is able to retain counsel of his own choice, he must be given a reasonable opportunity to do so." *United States ex rel. Ferenc v. Brierley,* 320 F. Supp. 406, 408 (E.D. Pa. 1970). We held, however, that the defendant was afforded a reasonable opportunity but had failed to pursue it in a reasonable manner, and therefore ruled that the denial of the continuance was not erroneous. Like the defendant in *Novak,* the defendant in *Minifield* was afforded a sufficient opportunity to secure the attorney of his choice.

The distinction between the facts of the present case

---

over, on August 29, the court ordered the Voluntary Defender to be prepared to proceed on September 28 in the event that the defendant was unable to secure private counsel.

and those of the *Novak-Minifield* line of cases is that the appellant here was laboring under the misapprehension that Mr. Quinlan would act as her trial counsel. This assumption is understandable in view of the facts that Mr. Quinlan represented the appellant at the preliminary hearing and that Mr. English was an associate of Mr. Quinlan. Because the appellant alleged that Mr. Quinlan was ill, it seems perfectly reasonable for her to have persisted in the belief that he would be trial counsel, despite the fact that Mr. English acted as her attorney at the suppression hearing. Furthermore, Mr. English, when asked by the District Attorney if he had been retained by the appellant, responded: "I was. Mr. Quinlan said he didn't want to take the case." It is certainly possible that Mr. Quinlan expressed that desire to Mr. English, his associate, but did not so inform the appellant. Mr. Quinlan may have assumed that the appellant was retaining his law firm, while the appellant obviously desired to have Mr. Quinlan personally represent her at trial. Whether or not the appellant's assumptions were reasonable, the summary dismissal of her request for a continuance did not evidence sufficient concern for the protection of a fundamental and essential constitutional right.

It is obvious that the appellant did not want Mr. English to represent her, although she offered no reason other than her preference to have Mr. Quinlan handle her defense. While it may be argued that the appellant has failed to show the "good cause" required for a substitution of counsel, *Commonwealth v. Velasquez*, supra, this case involves the discharge of retained counsel only in the narrowest sense. The appellant believed that Mr. English's efforts on her behalf ended with the suppression hearing. For this reason, the appellant's request cannot be equated with the one made in *Commonwealth v. Novak*, supra.[5] Moreover, because the appellant made

---

5. Nor is this case within the factual pattern of *Ungar v. Sarafite*, supra. In that case, the defendant was served with a show-

only one request for additional time, she does not fall within the language of *Velasquez* which states that a defendant cannot *continually* request new counsel when disagreements arise. 437 Pa. 262, 265, 263 A. 2d 351, 353.

The granting of a short continuance in this case would have satisfied both the constitutional right of the appellant to be represented by an attorney of her own choosing, and the interest of the public in the prompt and efficient administration of justice. "... [T]he state's interest in speedy trials is two-fold: To fulfill its constitutional obligation to provide all criminal defendants with speedy trials; to satisfy the public's right to have persons accused of crime tried with *reasonable* speed." *Moore v. Jamieson,* supra, at 312, 306 A. 2d at 290. (Emphasis added). Had the appellant's request been granted, she obviously could not later contend that she was deprived of her constitutional right to a speedy trial, and the public interest in an expeditious criminal justice system would not have been unduly thwarted. Under the circumstances of this case, the denial of the continuance adversely affected the appellant's constitutional right to counsel to a far greater degree than the adverse effect on the public interest that would have been engendered by a short continuance.[6]

---

cause order on Thursday, and a contempt hearing was scheduled for the following Tuesday. On Tuesday, the defendant appeared with an attorney but expressed a desire to have different counsel. That same day, a second attorney appeared for appellant, but withdrew his appearance when the trial judge refused to grant him a one-week extension to familiarize himself with the case. Thus, the defendant had an attorney of record and had five days to obtain new counsel. Under these circumstances, and in view of the fact that the defendant was also an attorney, the Court held that no constitutional rights were violated. In the present case, however, the appellant was unaware that a request would be necessary *until* the very day of trial, when it became apparent that Mr. Quinlan would not undertake her defense.

6. In its brief, the Commonwealth does not respond to the appellant's constitutional arguments. Instead, the Commonwealth

212

Judgment of sentence reversed and the case remanded for a new trial consistent with this opinion.

JACOBS and VAN DER VOORT, JJ., dissent.

argues that post-trial motions were not filed until twenty-four days after the verdict in violation of Rule 1123(a) of the Pennsylvania Rules of Criminal Procedure. It is apparent that this case presents exceptional circumstances, despite the fact that the District Attorney and the court informed the appellant that motions for a new trial would have to be filed within seven days. The trial judge could have appointed a Voluntary Defender to assist the appellant in the event that she would be unable to secure private counsel. As it turns out, the appellant sought the aid of private counsel, but he was unable to file the motions until twenty-four days after verdict. In view of the disposition of the merits, it would serve little purpose to remand the case with instructions that an appeal be allowed *nunc pro tunc*. Moreover, the lower court considered the appellant's claim that her request for a continuance was erroneously denied. The basic reason for requiring post-trial motions is to allow the trial court an opportunity to consider the issues that will be raised on appeal. That has been accomplished. See *Commonwealth v. Grillo*, 208 Pa. Superior Ct. 444, 449, n. 1, 222 A. 2d 427, 430, n.1. (1966).