422 A.2d 855

**COMMONWEALTH of Pennsylvania**

v.

**Michael Leo ANDREWS, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 13, 1979.

Filed Oct. 24, 1980.

Thomas G. Klingensmith, Assistant Public Defender, Lancaster, for appellant.

Ronald L. Buckwalter, District Attorney, Lancaster, for Commonwealth, appellee.

Before SPAETH, HESTER and CAVANAUGH, JJ.

CAVANAUGH, Judge:

Appellant, Michael Leo Andrews, was tried by a jury and convicted of burglary, conspiracy and possessing instruments of crime. The trial judge denied appellant's motions for a new trial and in arrest of judgment. He was sentenced to a term of imprisonment. Appellant filed an application for reconsideration of sentence, nunc pro tunc, which was denied. This appeal followed.

Appellant raises several arguments on appeal based on the trial court's refusal to grant him a continuance when defense counsel failed to appear at the time of trial. Appellant proceeded to trial without representation by counsel. His case was tried with that of his co–defendant, who was represented by counsel. Before addressing the specific arguments raised by Andrews, a recitation of the facts is needed.

On June 10, 1976 a complaint was filed charging Andrews with the offenses. Trial was originally scheduled November 23, 1976 but the appellant failed to appear. A bench warrant was issued, but appellant was not rearrested until October, 1977. On October 7, 1977 the defendant was arraigned and trial was rescheduled for November 14. During the arraignment appellant was questioned about retaining counsel and informed of his right to appointed counsel:

THE COURT: Do you understand you have the right for Counsel to be appointed free of charge if you can't afford it? Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: If you wish to retain your own Counsel you mad (sic) do so. Is that what you wish to do?

THE DEFENDANT: That's what I wish to do.

THE COURT: When is this case scheduled?

MR. KENEEFF: Monday, November 14, 1977.

THE COURT: You will appear at that time, Mr. Andrews, and you are assuring the Court you will have your own Counsel. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: We don't want any delay at that time in which you say you haven't made arrangements. We expect it to go to trial on that date.

THE DEFENDANT: Yes, sir.

THE COURT: You say you are making arrangements or have made arrangements?

THE DEFENDANT: I expect the attorney to be today.

THE COURT: Who is the attorney?

THE DEFENDANT: Mitchell Lipschultz (sic, Lipschutz) of Philadelphia was supposed to contact somebody here.

THE COURT: You make sure you have him here and have him enter an appearance for you.

(N.T., p. 4–5)

Five weeks later a post–arraignment hearing was held where Andrews was again questioned about counsel and told of the necessity that counsel appear. He stated again that he was represented by Lipschutz although he had not entered his appearance on behalf of the appellant.

Despite these warnings the appellant appeared without counsel on the day of trial. He claimed that Mitchell S. Lipschutz, a private attorney, had been retained but could not be present:

DEFENDANT ANDREWS: Your Honor, I spoke to my lawyer Thursday, and he said he definitely represents me. He is in court in Philadelphia this morning, and he asked

me to ask the Court to postpone the case until he can get out of the business he is handling.

(N.T., p. 10)

The record discloses that the only communication with Mr. Lipschutz took place when Mr. John C. Brighton, assistant court administrator for the criminal division, telephoned Lipschutz. Because during the post–arraignment hearing Andrews claimed he had retained Lipschutz, Brighton telephoned to verify this. Mr. Brighton was called to testify concerning this conversation:

THE COURT: Did you reach Mr. Lipschitz (sic, Lipschutz)?

THE WITNESS: Yes, sir, I did.

THE COURT: Did you talk to him?

THE WITNESS: Yes, sir, I did.

THE COURT: What was your conversation?

THE WITNESS: Well, sir, he told me that there was no way that he could be here Monday because of the fact that he would be on trial at city hall in Philadelphia.

THE COURT: Did he indicate to you whether he represented Mr. Andrews?

THE WITNESS: Yes, sir, he did. He said—

THE COURT: What did he say?

THE WITNESS: He said that he had simply received a letter from the gentleman saying he wanted to be represented, but that is as far as it went, because no monies were exchanged, and nothing else was done. He was waiting for some other word, but as far as he was concerned, he had not been retained.

THE COURT: He had not been retained by Mr. Andrews?

THE WITNESS: Yes, sir, he had not.

I further informed him that—of my position with the court, and that I intended to give the gentleman a public defender in case he would not be here, and he told me that he thought that was a good idea, because he couldn't be here because he was on trial in Philadelphia.

.    .    .    .    .

THE COURT: But Mr. Lipschitz stated that he had not been retained by Mr. Andrews?

THE WITNESS: Yes, sir, he did.

(N.T., pp. 16–18) The appellant did not refute Brighton's testimony but stated "What [Mr. Brighton] says is right." However, he claimed, two hours after Brighton's call appellant himself telephoned Lipschutz, who said that he definitely represented the appellant.[1]  (N.T., p. 20)

The lower court, treating what the appellant stated in the colloquy as a request for a continuance, denied the motion. The lower court ordered that a public defender be appointed "to sit with Mr. Andrews, and to be available to Mr. Andrews for such consultation or participation as Mr. Andrews determines to permit him in connection with the conduct of the case." (N.T. at 22) The trial proceeded. Neither Andrews nor the public defender participated in the proceedings. The following day the jury convicted Andrews of all charges.

## I.

Appellant maintains that the court's refusal to grant a continuance when appellant's counsel could not appear violated his constitutionally–protected right to counsel in that he was not given a reasonable opportunity to obtain counsel of his choice. It is clear that the right to assistance of counsel at trial includes the right to a reasonable opportunity to obtain private counsel of one's choice. *Common-*

1. In the post trial brief filed by him on behalf of Mr. Andrews, Lipschutz categorically denied that he ever stated to Mr. Brighton that he did not represent the appellant. He also stated that the question of whether or not a public defender should be appointed was never raised. Counsel stated, "It was always the intention of defense counsel to represent Mr. Andrews, as defense counsel is presently representing him on these post–trial matters. Defense counsel was familiar with the defendant's matter and was prepared to try the case, if a suitable date could be arranged by the Court Administration." (Post Trial brief, p. 3) If the foregoing is to be taken to mean that Attorney Lipschutz did intend to represent the appellant at the trial stage of the proceedings, he fails to explain the absence of an entry of appearance or of any communication, save Mr. Brighton's call, with the lower court.

*wealth v. Baines,* 480 Pa. 26, 389 A.2d 68 (1978); *Commonwealth v. Robinson,* 468 Pa. 575, 364 A.2d 665 (1976); *Moore v. Jamieson,* 451 Pa. 299, 306 A.2d 283 (1973). In *Commonwealth v. Robinson,* 468 Pa. at 592-3, 364 A.2d at 674, the Supreme Court explained this qualified right to particular counsel:

> In *Moore v. Jamieson,* 451 Pa. 299, 308, 306 A.2d 283, 288 (1973), this court specifically held that the right of the accused to choose his own counsel, as well as a lawyer's right to choose his clients, must be weighed against and may be reasonably restricted by "the state's interest in the swift and efficient administration of criminal justice." Although the accused may personally elect to waive his right to a speedy trial, he clearly cannot be permitted to utilize his right to choose his own counsel so as *unreasonably* to clog the machinery of justice and hamper and delay the state in its efforts to do justice with regard both to him and to others whose rights to a speedy trial may thereby be affected. (emphasis in original)

*See also United States ex rel. Carey v. Rundle,*[2] 409 F.2d 1210 (3d Cir. 1969), *cert. denied Carey v. Rundle,* 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970).

Thus in determining whether a continuance should be granted the trial judge must weigh the desirability of permitting a defendant additional time to obtain counsel of his choice against the equally desirable public need for efficient and effective administration of justice. *Commonwealth v. Simpson,* 222 Pa.Super. 296, 294 A.2d 805 (1972). We note, however, that the grant or denial of a continuance is traditionally a matter within the sound discretion of the trial court. *Commonwealth v. Richardson,* 392 Pa. 528, 140

2. In *Rundle* it was stated:
   To permit a continuance to accommodate one defendant may in itself prejudice the rights of another defendant whose trial is delayed because of the continuance. Played to an extreme conclusion, this indiscriminate game of judicial musical chairs could collapse any semblance of sound administration and work to the ultimate prejudice of many defendants awaiting trial in criminal courts. 409 F.2d at 1214.

A.2d 828 (1958); *Commonwealth v. Simpson, supra.* Therefore:

> [I]t is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances in every case, particularly in the reasons presented to the trial judge at the time the request is denied.

*Commonwealth v. Atkins,* 233 Pa.Super. 202, 207–208, 336 A.2d 368, 371–2 (1975), *quoting Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964). Applying this standard this court in *Commonwealth v. Simpson, supra,* held that where the defendant had had a period of eight months between the date of arrest and trial to secure private counsel and had been granted a continuance of one month to obtain an attorney of his choice, the defendant was not deprived of due process by the court's refusal to grant a second continuance. When requesting the second continuance the defendant did not indicate when, if ever, he would be able to raise sufficient funds to secure private counsel. In *Commonwealth v. Novak,* 395 Pa. 199, 150 A.2d 102, *cert. denied,* 361 U.S. 882, 80 S.Ct. 152, 4 L.Ed.2d 118 (1959), the Supreme Court upheld the trial court's refusal to allow private counsel for defendant to withdraw: "Defendant had a period of almost two years in which to procure counsel to his liking and in whom he could have confidence. He was never denied the opportunity to exercise the right. Defendant knew when his case would be called for trial. He could not wait for the very day of trial to choose another counsel." 395 Pa. at 214, 150 A.2d at 110. For a similar result see *Commonwealth v. Minifield,* 225 Pa.Super. 149, 310 A.2d 366 (1973). There it was held that the lower court did not err in refusing a continuance where defendant, represented by a

public defender, waited three weeks after receiving notice that he would receive unexpected income sufficient to allow the hiring of a private attorney before requesting a continuance on the day of trial. *See also Commonwealth v. Robinson, supra.*

In *Commonwealth v. Atkins,* 233 Pa.Super. 202, 336 A.2d 368 (1975), however, this court held that the lower court abused its discretion when it denied defendant's request for a continuance so that she could obtain other private counsel. There the defendant had made only one request for a continuance and was laboring under the misapprehension that the attorney who represented her at the preliminary hearing would act as trial counsel and not his associate, whom she did not want as trial counsel. Likewise in *Commonwealth v. Ross,* 465 Pa. 421, 350 A.2d 836 (1976), the court held that the lower court erred in refusing a continuance. There the trial date was less than three months after defendant's arrest. During the period he was in jail, Ross sought to have private counsel appointed and once released he immediately set about hiring a private attorney. The court also noted that there was no basis for the trial court's conclusion that the defendant's request for an attorney of his own choice was made in bad faith or for the purpose of delaying his trial.

In the instant case, when we examine the reasons presented to the trial judge at the time the request for a continuance was denied, we find no abuse of discretion. Appellant argues that the record is void as to whether the appellant was given sufficient opportunity to obtain counsel. To the contrary, however, the record reveals that the appellant had been given ample opportunity to obtain counsel. At both the arraignment of October 7, 1977 and the post–arraignment proceeding of November 10, 1977 the appellant was cautioned by the judge that trial would commence on November 14, 1977, and that he should have his attorney, whom he claimed represented him, enter his appearance on behalf of the appellant and appear on the day of trial. However, on the day of trial–a full seventeen months after

he was arrested–Andrews appeared without an attorney. Nor had private counsel entered an appearance. Faced with this and the additional information that Mr. Lipschutz did not, in fact, represent the appellant, it cannot be said that the lower court abused its discretion.

## II.

Appellant argues that the lower court attempted to have him waive his right to counsel. He maintains that he never waived his right to counsel and, to the contrary, indicated at all times that he wanted counsel to represent him at trial.

The question in this case is not the irresponsibility of the private attorney towards the defendant and the court, but the question of whether the trial court deprived the appellant of his constitutionally–guaranteed right to counsel. *See Commonwealth v. Robinson, supra*, 468 Pa. at 592, 364 A.2d at 674. A finding of waiver of the right to counsel will not be lightly made:

> To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments, thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

*Commonwealth v. Fowler*, 271 Pa.Super. 138, 142, 412 A.2d 614, 616 (1979). The records reveals, however, that Andrews made a knowing and intelligent waiver of his right to representation and that such waiver was made *despite* advice by the court to the contrary. As noted above, on October 7, 1977, forty–five days prior to trial, the appellant was advised of his right to court–appointed counsel. When he appeared at trial without counsel, the trial judge conducted an extensive colloquy. This colloquy comported with the requirements stated in *Fowler* as well as Rule 318(c), Pa.R.

Cr.P. Rule 318(c), the effective date (January 1, 1978) of which was after the colloquy before us, provides:

(c) *Proceedings Before a Judge.* When the defendant seeks to waive the right to counsel after the preliminary hearing, the judge shall ascertain from the defendant, on the record, whether this is a knowing, voluntary and intelligent waiver of counsel.

*See also Commonwealth v. Tyler,* 468 Pa. 193, 360 A.2d 617 (1976). In the *comment* to Rule 318 it is recommended that the trial judge, at a minimum, ascertain the following information from the defendant:

(1) That the defendant understands that he has the right to be represented by counsel, and the right to have free counsel appointed if he is indigent.

(2) That the defendant understands the nature of the charges against him and the elements of each of those charges.

(3) That the defendant is aware of the permissible range of sentences and/or fines for the offenses charged.

(4) That the defendant understands that if he waives the right to counsel he will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules.

(5) That the defendant understands that there are possible defenses to these charges which counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently.

(6) That the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to or otherwise timely raised by the defendant, these errors may be lost permanently.

The trial judge complied fully with this recommendation. He initiated the colloquy by asking Andrews if he was aware of his right to representation by counsel, and to free court–appointed counsel if indigent. Andrews stated that he understood these rights. (N.T., p. 5). He proceeded to explain

128

in detail the nature of the charges against the appellant and range of possible punishments. (N.T., pp. 5–10). The trial judge then focused upon the need for representation:

THE COURT: The Court has not had any communication from any counsel, Mr. Andrews, and we are proceeding with the trial, and I am asking you whether you understand the occurrences which go in a trial, and as to this point, I am asking whether you understand that if you waive the right of counsel, you will still be bound by all the normal rules of procedure, and counsel will be familiar with these rules; do you understand that?

DEFENDANT ANDREWS: No, I don't understand it.

THE COURT: Well, in a courtroom, Mr. Andrews, there are certain rules of procedure which exists (sic), and you will be bound by them whether you have an attorney of whether you don't have an attorney.

DEFENDANT ANDREWS: I understand that, Your Honor. . . .

\*    \*    \*    \*    \*    \*

THE COURT: . . . Are you aware, Mr. Andrews, that there are possible defenses to these charges, which counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently?

DEFENDANT ANDREWS: That is why I asked for a postponement, Your Honor. I am sure he has motions he would like to put in.

THE COURT: You are aware, are you, Mr. Andrews, there are possible defenses which counsel might be aware of?

DEFENDANT ANDREWS: No. He is not familiar with the case at all.

THE COURT: But, if you had counsel, then counsel would be aware of, upon your familiarizing him, with the—

DEFENDANT ANDREWS: Oh, yes.

THE COURT: Then he would be aware of possible defenses which you would not be aware of.

DEFENDANT ANDREWS: Yeah, I am sure.

THE COURT: Do you understand that in addition to defenses, the defendant has many rights that if not timely asserted may be lost permanently?

DEFENDANT ANDREWS: Yes, that is why I would rather wait until my lawyer comes. I don't know anything about it.

THE COURT: You realize there are defenses and rights that may be lost in the conduct of a trial; are you aware of that?

DEFENDANT ANDREWS: No, I don't have any—.

THE COURT: Well, there are certain things, Mr. Andrews, that go on during a trial, and an attorney has a right, and the individual defendant has a right, at the appropriate time to make objections to what is done in the trial, such as the presentation of certain evidence, that the defendant either himself, or through his attorney, may have the right to make objection to the introduction of that testimony.

DEFENDANT ANDREWS: I understand that.

THE COURT: You understand that if that objection is not made at that time then that right would be lost?

DEFENDANT ANDREWS: I understand that, yes, sir. (N.T., pp. 10–14) Still Andrews declined court–appointed counsel and continued to unreasonably insist upon being represented by Mr. Lipschutz.

After advising Andrews of the necessity of counsel, the trial judge directed that a public defender be appointed "to sit with Mr. Andrews, and to be available to Mr. Andrews for such consultation or participation as Mr. Andrews determines to permit him in connection with the conduct of the case." (N.T., p. 22) The appellant chose not to utilize this resource.

Appellant argues that this case is indistinguishable from *Commonwealth v. Grant*, 229 Pa.Super. 419, 323 A.2d 354 (1974). In *Grant* the defendant informed the court on the day of trial that he wished to be represented by private

counsel as opposed to court–appointed counsel. The trial judge, without informing the defendant of the exact charges, the maximum sentence, or the possible defenses, merely directed the defendant to discharge appointed counsel and to represent himself. The Supreme Court held that the defendant did not make an intelligent and voluntary waiver of his right to counsel.

In *Grant* the court compelled the defendant to waive his right to counsel. In the instant case the appellant was given a reasonable opportunity to obtain private counsel of his choice. Thereafter, he was advised of his right to court–appointed counsel and of the necessity of counsel. He was informed of the charges and their elements, possible sentences and the consequences of waiving the right to counsel. Still Andrews persisted in his demand that only counsel of his choice represent him. When court–appointed counsel was made available to him–not only to sit with the appellant, but to participate to any extent permitted by appellant–he chose to remain uninvolved in the proceedings. Although it is unfortunate that Andrews proceeded in this manner, we hold that his decision to do so was knowing and deliberate. Once it became clear that the application for a continuance was denied, appellant was given the choice to accept or reject court–appointed counsel; his intentional rejection of counsel, given the court's comprehensive and penetrating colloquy as described above, constituted a waiver.

Appellant further argues that he was denied effective assistance of counsel. This argument, however, is not available to one who insists on self–representation. Appellant states that the complexity of the circumstances involved in appellant's case were such that one untutored in the law could not represent himself with the skill and understanding that a lawyer would bring to the case. It was precisely of this fact that the trial court advised Andrews on the day of trial. Despite the court's advice, he proceeded to trial without counsel. Appellant further claims that several times on the record he indicated that he did not understand

the nature of the proceedings and wished to be represented by counsel. However, appellant would be more accurate if he were to state that he insisted on being represented by Mr. Lipschutz or by no one. The former not being possible, Andrews freely chose the latter and cannot now complain. The lower court did what it could to protect appellant's right to counsel by appointing an attorney to participate or not, as appellant wished.[3]

### III.

▪▪▪ Appellant argues that, due to a conflict of interest, he should be given a new trial. A conflict of interest may be established if the appellant can show either: (1) that he had a substantial defense, which was not raised, that was inconsistent with that of his co–defendant; or (2) that counsel neglected his case in order to concentrate on that of the co–defendant. *Commonwealth v. Cox*, 441 Pa. 64, 270 A.2d 207 (1970). Appellant alleges neither.

▪▪▪ Appellant's claimed conflict is apparently based solely on the fact that his court–appointed counsel and his co–defendant's counsel were both from the Lancaster County public defender's office. Because the appellant did not permit court–appointed counsel to participate in any way, it is clear that he cannot argue that counsel's performance created a conflict.[4] Even if counsel had participated, the mere fact that they were from the same public defender's office does not warrant a finding of a conflict of interest. *See Commonwealth v. Armbruster*, 225 Pa.Super. 415, 311 A.2d 672 (1973) (conflict of interest will not be found from

3. Where a defendant seeks to represent himself the court should appoint standby counsel. *See Commonwealth v. Africa*, 466 Pa. 603, 621, 353 A.2d 855, 864 (1976) (standby counsel appointed to protect Sixth Amendment rights where disruptive behavior of defendants may lead to their removal from the courtroom).

4. In *Cuyler Correctional Superintendent, et al. v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the United States Supreme Court recently held that in order to demonstrate a violation of his Sixth Amendment right to counsel, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance.

the mere fact that the attorneys for two co–defendants are partners). Therefore, because appellant fails to show any conflict creating a possibility of harm, *see Commonwealth ex rel. Whitling v. Russell,* 406 Pa. 45, 176 A.2d 641 (1962), the argument is without merit.

## IV.

Finally, appellant contends that the lower court abused its discretion by imposing a sentence manifestly excessive under the circumstances. Andrews was sentenced on the charge of burglary to a term of imprisonment of not less than five years nor more than ten. On the conspiracy charge he was sentenced to concurrent terms of not less than five nor more than ten years, and on the charge of possessing instruments of crime he was sentenced to a term of not less than two and one–half nor more than five years, also to run concurrently. Appellant conceded that these sentences are within the statutory limits.

On appeal the sentence is usually left undisturbed because the lower court is in a far better position than the appellate court to weigh factors involved in determining the proper sentence. *Commonwealth v. Wareham,* 259 Pa.Super. 527, 531, 393 A.2d 951, 952–3 (1978). However, the record must be reviewed to ascertain the judge's reasons for imposing the particular sentence. *Commonwealth v. Kostka,* 475 Pa. 85, 379 A.2d 884 (1977); *Commonwealth v. Riggins,* 474 Pa. 115, 377 A.2d 140 (1977). The sentencing judge must have accurate information, including a presentence report where required, and in arriving at an individual sentence, the judge must consider the character of the defendant and the particular circumstances of the offense. *Commonwealth v. Knight,* 479 Pa. 209, 387 A.2d 1297 (1978); *Commonwealth v. Martin,* 466 Pa. 118, 351 A.2d 650 (1976). Finally, the judge must make his reasons for imposition of the particular sentence clear on the record. *Commonwealth v. Riggins, supra.* The sentence imposed should be the minimum consistent with the protection of the public, the gravity of the offense and the rehabilitative needs of the

defendant. *See* 18 Pa.C.S. § 1321(b); *Commonwealth v. Martin, supra*; ABA Project on Minimum Standards of Justice, Standards Relating to Sentencing Alternatives and Procedures § 22 (Approved Draft 1968).

■■■ It is clear from the record that the sentence imposed is proper. The trial judge considered a presentence report, the character of the defendant and the particular circumstances of the offense. The judge noted that Andrews had served five years in the New Jersey State Penitentiary for breaking and entering. Due to the seriousness of the offenses committed and the existence of an undue risk that the offenses will be repeated if partial confinement or probation is ordered, the court concluded that total confinement for the term stated above was required.

Judgment of sentence affirmed.

SPAETH, J., files a dissenting opinion.

SPAETH, Judge, dissenting:

As the majority correctly notes, the right to the particular counsel of one's choice is not absolute; instead, it is necessary to balance the defendant's desire for a particular counsel against the Commonwealth's interest in the efficient administration of justice. In my opinion, here the balance is clearly in appellant's favor. The lower court refused appellant's request for a very brief delay, certainly no more than half an hour, which would have allowed a telephone call to counsel to confirm, or refute, appellant's claim that he was represented. This was an abuse of discretion. Furthermore, the record establishes that appellant never waived his right to counsel but was forced to trial without counsel. For both of these reasons the judgment of sentence should be reversed and the case remanded for a new trial.[1]

1. Because I believe that appellant was improperly denied the assistance of counsel and must therefore receive a new trial, I do not reach the other issues discussed by the majority opinion, at 862–864.

134

1

In stating the factual history of the case, the majority gives the impression that for "a full seventeen months," at 860, appellant did nothing about getting private counsel, and then "appear[ed] on the day of trial" without counsel, *id.*, when he not only "did not refute" but agreed with testimony by the assistant court administrator that in fact he had not retained counsel, at 858. The record shows that the case is quite otherwise.

In November 1976 appellant failed to appear for trial. Instead he jumped bail and was a fugitive for almost a year. In October 1977 he was rearrested and held in jail in Lancaster County until his trial on November 14, 1977. From his arraignment on October 7, 1977, until his trial appellant consistently maintained that he was represented by attorney Mitchell Lipschutz of Philadelphia. It is true that on the day of trial that was controverted by the testimony of the assistant court administrator, who said that Lipschutz had told him that although he had received a letter from appellant, no retention agreement had been completed. It is also true that when asked about this testimony, appellant replied that "[w]hat he says is right." However, that is not all that appellant said. The majority opinion omits the fact that appellant also said that after the assistant court administrator's call, Lipschutz had told him on Thursday that he would not be able to telephone the court Friday because that would be closed (Friday was Veterans' Day) and that if someone from the court would telephone him on Monday, he would confirm that he did represent appellant but could not be there because he was engaged. This appears from the following portion of the colloquy, which the majority omits (*see* at 861–862):

DEFENDANT ANDREWS:

I spoke to a person from the prison, talked to my attorney, too, and he said he definitely represented me, and he cannot get up here.

THE COURT:

There has been no appearance entered on your behalf, Mr. Andrews, and the Court has received no communication.

Has the District Attorney received any?

MR. KENNEFF:

I think we can put on record, from Mr. Brighton, that he did in fact have a communication with Mr. Lipschitz [*sic*–Lipschutz] and Mr. Lipschitz says he does not represent Mr. Andrews.

THE COURT:

Is Mr. Lipschitz the attorney whom you–

DEFENDANT ANDREWS:

Yes, sir. After a couple of hours later we called from the prison, he said he definitely represents me, he cannot get up here today, he is in court. *He said a simple phone call would verify it.* He said he couldn't get in touch with the Court Friday because it was closed.

THE COURT:

Send for Mr. Brighton, I will continue this. [The court then resumed the colloquy.] (Emphasis added.)

In deciding whether the lower court abused its discretion in refusing to take the little time required to have a telephone call made to Lipschutz, and in forcing appellant to go to trial without counsel, the majority, at 860, and the lower court, slip op. at 5, both hold against appellant the fact that he jumped bail and became a fugitive. It appears to me that the proper consideration in balancing appellant's interest in being represented by the counsel of his choice and the Commonwealth's interest in the efficient administration of justice should be limited to the question of what prejudice to the Commonwealth would result if appellant's request that a telephone call be made were granted. Without question, appellant did inexcusably delay his trial when he jumped bail and became a fugitive. However, requiring a defendant to go to trial without counsel is an inappropriate sanction for such conduct. Other sanctions exist. *See e. g.*, 18 Pa.C.S.A. § 5124 (a person set at liberty by court order upon condition that he will subsequently appear at specified time

or place commits criminal offense if without lawful excuse he fails to appear).

Instead of emphasizing the length of time that appellant was a fugitive, we should consider the diligence of his efforts to obtain counsel once he was rearrested and the reasonableness of his belief that counsel of his choice would represent him. As part of this consideration we should keep in mind that appellant was incarcerated from the time of his rearrest until the time of trial. An accused who is incarcerated pending trial may encounter substantial difficulties in retaining private counsel, for not only will he be unable to go to counsel's office, but his ability to negotiate a retention agreement may be further compromised by the loss of income from regular employment occasioned by his incarceration. These difficulties will be compounded if the accused is incarcerated in a county distant from his home. In the present case, appellant's home is in Philadelphia, some distance from Lancaster County. Nevertheless, despite the consequent difficulties, during the period of forty–three days from his rearrest to trial, appellant had communicated with Attorney Lipschutz. When asked by the court at a post–arraignment hearing on November 10, 1977, if he had paid Lipschutz, his response was "My family is." *See* lower court slip op. at 3. This is a further indication that appellant could reasonably have thought that he had done all he had to do, and all he could do, to assure representation at trial by the counsel of his choice.

In deciding whether the lower court has abused its discretion by denying a defendant counsel of his choice, the appellate courts have considered three factors to be of particular importance. First is the past opportunity of the defendant to obtain counsel of his choice and the use he has made of that opportunity. Second is the amount of additional time being asked for and the prejudice, if any, to the Commonwealth in granting the defendant that additional time. And third is the nature of the alternative to the defendant's representation by his chosen counsel.

In *Commonwealth v. Novak*, 395 Pa. 199, 150 A.2d 102, *cert. denied*, 361 U.S. 882, 80 S.Ct. 152, 4 L.Ed.2d 118 (1959), the defendant had had two years after first indicating dissatisfaction with his retained counsel to obtain other representation. When, on the day set for trial, he asked for the opportunity to obtain other counsel, there was no indication that he had anyone else in mind. In addition, and important, his previously retained counsel had conducted a vigorous defense up to that time and continued to do so after their motions to withdraw were denied.

In *Commonwealth v. Simpson*, 222 Pa.Super. 296, 294 A.2d 805 (1972), the defendant had had eight months in which to obtain private counsel, including a one month continuance after the case was first called for trial. There was no indication that he had been hampered by incarceration or in any other way from obtaining private counsel sooner. At the time his request for a further continuance was denied, he still could not say how much more time he would need to complete his arrangements with his chosen counsel. And finally, he had been represented all along by a public defender who was familiar with the case, which lacked "complex issues," *id.*, 222 Pa.Super. at 299, 294 A.2d at 806.

In *Commonwealth v. Minifield*, 225 Pa.Super. 149, 310 A.2d 366 (1973), the defendant waited three weeks after receiving notice of a workers' compensation award before requesting a continuance on the day of trial. The continuance would have led to further delay because some of the witnesses would have become unavailable. And as in *Simpson* and *Novak*, the defendant was already being represented by counsel thoroughly familiar with the case. Further, it appeared from the colloquy between the defendant and the calendar judge who denied the continuance that the defendant may have been motivated to seek a delay more by the desire to have his case heard before a different judge than by the desire to have private counsel. *Id.*, 225 Pa.Super. at 159, 310 A.2d at 371.

In *Commonwealth v. Robinson*, 468 Pa. 575, 364 A.2d 665 (1976), the defendant had been represented by private coun-

sel at his preliminary hearing. Afterwards he had no further direct contact with that counsel and at the time his case was scheduled for presentation to the grand jury, several months later, counsel had still not entered an appearance. The court then on its own motion appointed an experienced trial lawyer to represent the defendant because he had refused to cooperate with the public defender. A month later the defendant's chosen counsel entered an appearance, but when the case was called for trial two months after that, counsel wrote the court saying he had a conflict and asking for a continuance. The case was continued for two more months. At that time, when counsel still did not appear for trial, the court ordered the case to go to trial the following day with the back–up counsel appointed six months earlier. There was no indication of when, if ever, the defendant's chosen counsel would appear, and back–up counsel was fully prepared for trial.

In all of these cases it was held that the lower court had not abused its discretion in requiring the defendant to proceed to trial without counsel of his choice. These cases may be contrasted with cases in which an abuse of discretion was found.

In *Commonwealth v. Atkins*, 233 Pa.Super. 202, 336 A.2d 368 (1975), the defendant had been represented by counsel of her choice at her preliminary hearing. At a subsequent suppression hearing she was represented by another member of the same firm. On the day of trial she asked for a continuance to obtain different counsel. Her explanation was that she had believed the appearance of her chosen counsel's associate at the suppression hearing was only because her counsel had a broken leg and was unable to be in court, but that by the time of trial she had learned that her chosen counsel had not agreed to represent her personally. At most he had agreed to have his firm provide representation. She said that the associate who had appeared at the suppression hearing and who was in court the day of trial was not acceptable to her. The court denied her request for a continuance and forced her to go to trial, giving her the

choice between the counsel she did not want and representing herself. There was nothing to indicate that she was deliberately seeking delay or would not be able to obtain acceptable counsel expeditiously, nor was there any indication that the Commonwealth would have been prejudiced by a short continuance. In these circumstances we held that the lower court had abused its discretion in forcing the defendant to go to trial with counsel unacceptable to her. We noted that in distinction from *Simpson*, there had been no prior continuance, and that in distinction from "the *Novak–Minifield* line of cases," the defendant had reasonably believed that counsel of her choice would represent her at trial. "The granting of a short continuance," we said, would have satisfied both the constitutional right of the appellant to be represented by an attorney of his own choosing, and the interest of the public in the prompt and efficient administration of justice." *Id.*, 233 Pa.Super. at 211, 336 A.2d at 373.

In *Commonwealth v. Ross*, 465 Pa. 421, 350 A.2d 836 (1976), the defendant was brought to trial eleven weeks after his arrest. For all but three days of that time he had been incarcerated. While incarcerated he had filed a petition for appointment of counsel, which had never been acted on. During his three days of liberty before trial be obtained counsel, but quite understandably, counsel declined to enter his appearance unless the lower court would grant a continuance so that he could prepare for trial. The lower court refused to grant a continuance and ordered that the trial proceed with the defendant being represented by a public defender who was both inexperienced and unfamiliar with the case. There was no indication that the Commonwealth would have been prejudiced by a continuance. During the trial neither the defendant nor the public defender conducted any cross–examination, and no evidence was presented on the defendant's behalf. Again an abuse of discretion was found, the Court noting that the trial was less than three months after arrest, and that while in jail the defendant had sought private counsel, and had retained counsel upon his

release just before trial. Again *Simpson* and *Minifield* were discussed and distinguished.

It is clear to me that the present case is much closer to *Atkins* and *Ross* than to *Novak, Simpson, Minifield* and *Robinson.* The time between appellant's rearrest and trial was even less than the eleven weeks in *Ross.* In spite of the difficulties of being incarcerated at a distance from his home, appellant thought he had made arrangements to be represented by counsel of his choice, as in *Atkins.* There was no indication that the Commonwealth would be prejudiced—how *could* it have been prejudiced by a half hour delay for a telephone call?—or that appellant was deliberately trying to delay his trial. Contrast *Minifield.* There was no indication that appellant's chosen counsel would not be available at a specific time in the near future. Contrast *Robinson.* And finally, there was no alternative counsel available and already familiar with the case at the time of trial. Contrast *Novak, Simpson, Minifield* and *Robinson.*

I believe that it was an abuse of discretion for the lower court to refuse appellant's request that Attorney Lipschutz be telephoned regardless of what response Lipschutz might have made to the call. However, the fact that Lipschutz has consistently maintained in post–trial proceedings that he told the assistant court administrator that he *did* represent appellant, and has controverted the administrator's account of their conversation in other ways as well, *see* majority opinion at 858 n. 1, only emphasizes the importance of giving criminal defendants the benefit of the doubt when their right to counsel is at issue.

## 2

The colloquy reprinted in the majority opinion, at 861–862, occurred when appellant was still pleading with the court to grant him a continuance so that his chosen counsel could be present; it preceded the testimony of the assistant court administrator concerning his conversation with Attorney Lipschutz.[2] The issue is not whether *before* his request for a

2. The order of presentation in the majority opinion is reversed.

continuance was denied appellant understood the importance of having counsel but rather whether the record affirmatively shows that *after* the court had denied his request for a continuance, he *then* voluntarily and intelligently waived his right to counsel.

No court should lightly assume that an accused has waived his right to counsel. *Commonwealth v. Hauser*, 265 Pa.Super. 135, 401 A.2d 837 (1979). Waiver must be of record, *Commonwealth v. Tyler*, 468 Pa. 193, 360 A.2d 617 (1976); *Commonwealth v. Barnette*, 445 Pa. 288, 285 A.2d 141 (1971); *Commonwealth ex rel. Gordon v. Myers*, 424 Pa. 352, 227 A.2d 640 (1967), and may not be found from the appearance of an accused without counsel or from the accused's failure to request counsel. *Commonwealth v. Grant*, 229 Pa.Super. 419, 323 A.2d 354 (1974). Here, as the colloquy quoted in the majority opinion shows, appellant clearly did not wish to proceed to trial without legal assistance.

The majority says, however, that "appellant was given the choice to accept or reject court–appointed counsel; his intentional rejection of counsel constituted a waiver." At 862. The choice that was offered appellant, between representing himself and having the assistance of a public defender he had never met before and who had had no opportunity to prepare the case, cannot serve as the basis for finding waiver. Indeed, not even the lower court regarded its order—that a public defender should "sit" with appellant during trial and be available "for such consultation or participation" as appellant wished—as constituting an "appointment" of the defender as appellant's counsel—and given the defender's lack of opportunity to prepare, the order could not have been so regarded.[3] As the Supreme Court observed in *Ross*, "The refusal to give [counsel] any time denied

3. The majority cites *Commonwealth v. Africa* 466 Pa. 603, 621, 353 A.2d 855, 864 (1976), for the proposition that when a defendant seeks to represent himself the court should appoint standby counsel. That case is inapposite for two reasons. First, it is predicated on there having been a prior valid waiver of counsel. Second, it assumes that the standby counsel will have had an opportunity to become sufficiently familiar with the case to be able to be effective.

appellant his right to counsel and could only give rise to an ineffective assistance of trial counsel claim in a subsequent proceeding." 465 Pa. at 427, 350 A.2d at 839. Thus, the majority's description of the public defender as "court–appointed counsel" is unwarranted; and the record cannot possibly show that appellant "reject[ed]" something he was never offered. Finally, also as in *Ross*, the trial itself confirmed that appellant did not wish, and did not feel able, to represent himself. Appellant did not make an opening statement, he conducted no cross–examination, offered no witnesses, and made no closing argument. It does not seem to me that justice was served.

The judgment of sentence should be reversed and the case remanded for new trial.