350 A.2d 836

**COMMONWEALTH of Pennsylvania**

v.

**William ROSS, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 21, 1975.

Decided Jan. 29, 1976.

Defender Assn. of Philadelphia, Benjamin Lerner, Defender, John W. Packel, Chief, Appeals Div., Leonard N. Sosnov, Asst. Defender, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Glenn S. Gitomer, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant William Ross was convicted, following a jury trial, of burglary, larceny, receiving stolen goods, and possession of burglary tools. Post-trial motions were denied, and a sentence of three and one half to ten years in prison was imposed. The Superior Court affirmed the judgment of sentence in an opinionless per curiam order. On this appeal [1] appellant urges that the trial court abused its discretion [2] in failing to grant him a continuance and, as a result, his conviction should be

[1] We hear this appeal under the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 204, 17 P.S. § 211.204 (Supp.1975).

[2] The grant or denial of a motion for a continuance lies within the trial court's discretion. See *Commonwealth v. DiPasquale*, 431 Pa. 536, 246 A.2d 430 (1968); *Commonwealth v. Minifield*, 225 Pa.Super. 149, 310 A.2d 366 (1973); *Commonwealth v. Simpson*, 222 Pa.Super. 296, 294 A.2d 805 (1972).

reversed. We agree, reverse the order of the Superior Court, vacate the judgment of sentence and remand for a new trial.

Appellant was arrested on April 18, 1972, and placed in jail. He was arraigned on June 6, 1972, and trial was scheduled for July 6, 1972. During the entire period from arrest until three days before the scheduled date of trial, appellant remained in prison. While in jail, he filed an uncounselled petition for the appointment of counsel. No action on this petition was taken prior to trial.

On July 6, 1972, an attorney who had been retained by appellant that day presented himself to the trial court. He offered to make an appearance conditioned on the grant of a continuance to prepare a defense and to complete his financial arrangements with appellant. Because the continuance was denied, appellant's chosen attorney refused to enter an appearance. At trial, appellant asserted his desire to have chosen counsel represent him. He informed the court that he had requested appointment of counsel in mid-June. The trial court, purporting to act on appellant's petition, appointed the voluntary defender to represent him. When the selection of jurors was to begin the following took place:

"THE COURT: Ready to proceed, Mr. Ross [the appellant] ?

THE DEFENDANT: No, sir. I am not ready.

MR. EISENBERG [The voluntary defender]: Judge, I am not ready either.

THE COURT: What is the problem?

MR. EISENBERG: For one thing I don't know enough about the case.

THE COURT: Sit down. You will have time to talk about it.

COURT CRIER: We are bringing a panel [of jurors] in now, Judge.

424

THE COURT: Any questions you want on voir dire, I want them in writing, otherwise you will have to be satisfied with the questions I ask.

MR. EISENBERG: Judge, I have never even voir dired.

THE COURT: Well, watch. There is always a first time."

Following the selection of jury, court was recessed at 4:45 p. m. until the next morning. At the beginning of the next session, appellant again objected to being compelled to accept representation by the voluntary defender's office. Mr. Eisenberg added to appellant's objections his own objection to being compelled to represent someone who had no faith in him. The voluntary defender also objected to being forced to go to trial immediately:

"MR. EISENBERG: . . . The Court, of course, is also aware that I had no familiarity with the case, having been sent over as a substitute for Miss Bailey. I knew nothing about the case at all. And when informed that [appellant's chosen counsel] would not be handling the case, after glancing at the file, it became clear to me that the case would need more preparation than the time I had.

THE COURT: That was yesterday morning.

MR. EISENBERG: Yes.

THE COURT: 24 hours have passed.

MR. EISENBERG: Yes. And I made my application to continue, and the Court denied that.

THE COURT: All I want to point out is, you have had 24 hours since the time you made that application.

.    .    .    .    .    .    .    .

THE COURT: The single factor which contributes mostly to the buildup of the backlog is continuances. Until the Court takes a firm position we are going to continue to have a backlog. We can't postpone cases on the grounds that they want to get counsel of their

choice. It causes a breakdown of the whole system. Simple as that." [3]

A short time later the voluntary defender again objected to being forced to represent appellant against appellant's wishes. This exchange took place:

"MR. EISENBERG: Once again I would like to get on the record the fact that I must object to being forced to represent a man who does not want me.

THE COURT: You don't have to be forced. If he wants to go to trial with somebody else he is free to do that. If he wants to go to trial by himself he is free to do so. If he doesn't want to go to trial, he can sit there. And you can sit there. That is the risk he takes. I am not forcing you to do anything or forcing your client to do anything. All I am doing is forcing the case to trial. If he doesn't want you to represent him and he wants to sit there by himself, that is up to him. All I have, his counsel is available."

---

**3.** The simplicity which the trial court apparently saw ignores substantial constitutional rights of the appellant, and also fails to take into consideration the lesson of this Court's opinions dealing with refusals to grant continuances in civil cases without regard to the circumstances of the individual case. In *Budget Laundry Co. v. Munter,* 450 Pa. 13, 21–22, 298 A.2d 55, 58 (1972), we said:

"Dilatory practices by lawyers cannot be countenanced. Nor can lawyers be permitted to disrupt the orderly process of disposition of litigation by the sheer weight of the number of cases which they are engaged to try. But it must always be borne in mind that lawsuits are more than numbers or punches in computer cards. Individual cases are, of course, of great importance to the litigants involved, and courts must not overreach in their zeal to move cases to such an extent as to allow for no deviations from strict and literal adherence to policies justifiably laid down to improve the condition of the courts. We believe that the instant case is just such a case as requires the tempering of the strict trial policy in order that justice be done."

The interests weighed in the quote are all present in a criminal case and the balance struck could only be even more in favor of granting the continuance where it is the litigant's liberty that is at stake.

Finally, after appellant was arraigned in court, he requested an opportunity to speak to the trial judge out of the hearing of the jury:

"THE DEFENDANT: Your Honor, I wish to discharge my attorney.

THE COURT: You can do that if you want to.

THE DEFENDANT: Yes, sir.

THE COURT: You want to try the case yourself?

THE DEFENDANT: No, sir.

THE COURT: Well, I will instruct counsel to sit at counsel table with you and to provide you with whatever assistance you need.

THE DEFENDANT: I don't need it.

MR. EISENBERG: Mr. Ross, I think it is proper that you understand what the consequences of discharging your counsel would be. The Judge is trying to say that the Court is going to proceed in this case.

THE DEFENDANT: It can proceed. But I just don't wish to have counsel. I don't wish to take part.

THE COURT: All right.

Well, I will instruct Mr. Eisenberg to remain with you at counsel table, and take whatever steps you want him to take.

THE DEFENDANT: I don't want him to take any steps, Your Honor.

THE COURT: All right. Just so you know that. All right. Fine."

During the trial neither appellant nor the voluntary defender conducted any cross-examination. No evidence was presented on appellant's behalf. Appellant made a short closing statement. At no point during the trial did the voluntary defender act as appellant's attorney.

Appellant argues that it was an abuse of the trial court's discretion to deny all requests for a continuance and to force his case to trial. We agree.

The July 6, 1972, trial date was the first listing for appellant's trial. This was less than three months after his arrest. During the period he was in jail, appellant sought to have private counsel appointed. Once he was released, he immediately set about hiring a private attorney. There is no basis upon which to conclude, as did the trial court, that appellant's request for an attorney of his own choice was made in bad faith, for the purpose of delaying his trial.

In addition to questioning the good faith of appellant, the trial court attempted to justify its refusal to grant a continuance by reciting Pennsylvania Rule of Criminal Procedure 301(b), and by invoking the spectre of crowded dockets.

Rule 301(b) provides:

"(b) An application for continuance on behalf of the defendant shall be made not later than forty-eight (48) hours before the time set for trial. A later application shall be entertained only when the opportunity therefor did not previously exist, or the defendant was not aware of the grounds for the application, or the interests of justice require it."

There is nothing in rule 301(b) that prevented the trial court from entertaining appellant's repeated motion for a continuance. We are compelled to find that the "interests of justice" required the grant of a continuance. Both of appellant's prospective attorneys asserted that they needed time to prepare his defense. The refusal to give them any time denied appellant his right to counsel and could only give rise to an ineffective assistance of trial counsel claim in a subsequent proceeding. Moreover, there is no evidence of bad faith by appellant. Denial of a motion for a continuance in these circumstances gives rise only to unnecessary appeals to this Court and unnecessary proceedings in the trial court. There was no valid reason to "forc[e] the case to trial." The trial court's decision to do so, in the face of persuasive rea-

sons for granting a continuance, was an abuse of discretion.[4]

The Commonwealth, attempting to justify the trial court's refusal to grant a continuance, directs our attention to four cases, two from the Superior Court and two from the federal courts of appeals for the second and third circuits. The trial courts in each of these cases were presented with distinctly different situations than that presented here. In *Commonwealth v. Minifield*, 225 Pa.Super. 149, 310 A.2d 366 (1973), the Superior Court refused to find that a trial court had abused its discretion by refusing to grant a continuance. There appellant had been represented by the voluntary defender for more than six months; appellant had made no attempt to obtain retained counsel for over twenty days after he became financially able to pay for an attorney; appellant wished to retain an attorney who would not be available for another twenty days; and, if the case were continued, the witnesses would not be available for another forty days.

In *Commonwealth v. Simpson*, 222 Pa.Super. 296, 294 A.2d 805 (1972), the Superior Court held that a trial court did not abuse its discretion by failing to grant a continuance where it appeared that appellant had been arrested on November 7, 1970, that arraignment was scheduled and continued four times until arraignment was held on May 5, 1971, that his trial was scheduled for June 3, 1971, and once continued for appellant to obtain counsel of his own choice, and that the denial of a second

4.  See, e. g., *Commonwealth v. Velasquez*, 437 Pa. 262, 263 A.2d 351 (1970), in which a trial court forced a case to trial over defendant's objection. In that case the defendant wanted to go to trial, his counsel urged him to plead guilty. Defendant stated that he had lost confidence in his counsel and wanted to retain new counsel for trial. His motion for a continuance was denied, so he pled guilty, apparently accepting counsel's advice. We reversed, holding that it was an abuse of discretion not to grant the continuance.

continuance on July 8, 1971, was the basis for appellant's appeal.[5]

In these cases the trial courts denied the requested continuance only after the defendant had been given some actual opportunity to obtain counsel of his own choice and only in the face of actual or circumstantial evidence of attempts, by the defendant, to delay the proceedings. Neither of these elements, which should have been considered, are present here. There is no support in Pennsylvania law for the trial court's decision to "forc[e] the case to trial" despite the substantial possibility of prejudice to appellant, and despite the actual denial of his constitutional rights.[6]

Order reversed, case remanded for a new trial.

POMEROY, J., filed a concurring opinion in which NIX, J., joins.

MANDERINO, J., concurs in the result.

[5] In *United States ex rel. Carey v. Rundle*, 409 F.2d 1210 (3d Cir. 1969), cert. denied, 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970), the petitioner was arrested on June 2, 1966, and was first scheduled for trial on August 29, 1966. At that time he was granted a continuance for the purpose of obtaining counsel. Thirty days later, when the case came up for trial, petitioner still did not have retained counsel. The trial began, but upon the appearance of retained counsel, the trial court offered to continue it through the weekend to permit him to enter the case. This was not enough time for retained counsel who refused to make a formal appearance. The failure to grant a second continuance, after trial had begun, was held not to be an abuse of discretion.

In *United States ex rel. Baskerville v. Deegan*, 428 F.2d 714 (2d Cir. 1970), the petitioner was represented by retained counsel for several months before he sought to discharge him the day his trial was to start. There had been no expression of dissatisfaction with retained counsel before the attempt to discharge him. The second circuit held that the refusal to grant a continuance to allow petitioner an opportunity to obtain new counsel of his own choosing was not a denial of his sixth amendment rights.

[6] The refusal to grant the continuance not only infringed upon appellant's right to counsel of his own choice, but, because counsel would have been forced to go to trial unprepared, also infringed upon all of the rights guaranteed by jury trial.

POMEROY, Justice (concurring).

I agree that the trial court should have granted a continuance in this case and that its failure to do so was an abuse of discretion which requires a new trial. My reasons for so concluding however, do not coincide with those of the majority.

Appellant had from the beginning of this case, both at the preliminary hearing held on April 16, 1972, and the arraignment held June 7, 1972, been represented by counsel in the person of the Public Defender. On the day trial was to commence, July 6, 1972, appellant was still represented by the Public Defender (although through a different lawyer attached to that office), who on that day appeared with appellant and requested a continuance so that appellant could retain "private" counsel.*

The trial court determined, and I agree, that a continuance for that purpose was not warranted. As the Superior Court has well observed, "although a defendant has an absolute right to counsel, he has no absolute right to a particular counsel and so a request for additional time to secure a particular counsel may, in the court's discretion, be denied." *Com. v. Simpson*, 222 Pa. Super. 296, 300, 294 A.2d 805, 807 (1972). To hold otherwise would indeed be disruptive of the orderly process of calendar administration, and for no constitutionally required purpose. The court therefore acted properly, in my view, when it directed the Public Defender to continue to represent the appellant.

If this were all there were to the matter, I should be obliged to dissent. But the record indicates that the

---

* This request was in furtherance of a petition which appellant had filed two weeks earlier, on June 23, 1972, for the appointment of "private" counsel. There is no indication in the record as to why the motion for continuance was not timely filed at least 48 hours before the time set for trial, in accordance with Pa.R.Crim.P. 301(b). I agree, however, that in this case the motion could be entertained in "the interests of justice."

member of the Public Defender's staff sent to represent appellant on the day of trial was a neophite substitute for another member of the staff, that he "knew nothing about the case at all", that he was "not ready" to proceed, and that, to quote him again, he had "never even voir dired." This lack of readiness was not the fault of appellant, and in my view should have caused the court to grant a continuance so that the lawyer from the Defender's Office who was familiar with the case and should have been on hand could be obtained, or so that the new lawyer could become adequately prepared. Merely to order the inexperienced new lawyer to sit with the defendant through the trial to render such assistance as might be requested was, in these circumstances, not adequate.

NIX, J., joins in this concurring opinion.