523 A.2d 363

**COMMONWEALTH of Pennsylvania**

**v.**

**Benedict SCHEPS.**

**Appeal of Alan M. LIEBERMAN.**

Superior Court of Pennsylvania.

Argued Oct. 23, 1986.

Filed March 24, 1987.

James D. Crawford, Philadelphia, for appellant.

Charles P. Mackin, Jr., Deputy Attorney Gen., Harrisburg, for Com., appellee.

Before WIEAND, OLSZEWSKI and CERCONE, JJ.

CERCONE, Judge:

Attorney Alan M. Lieberman appeals from the lower court's denial of his uncontested petition for leave to withdraw as counsel for his client, Benedict Scheps. The lower court, after a hearing, denied Mr. Lieberman's request to withdraw.

The facts which prompted the filing of the petition for leave to withdraw, as developed at the hearing, are as follows: Mr. Scheps was apparently at one time a successful cheese manufacturer in the Wyoming County area of Pennsylvania, where he had transferred his business from New Jersey. He was President of two family-owned businesses, the Scheps Cheese Company and the Bradford County Farms, Inc., both of which became major employers in the Wyoming County area.

It appeared, without contradiction at the hearing, that Mr. Scheps began as a well-intentioned business man who made substantial financial commitments in moving his plant from New Jersey to the Wyoming County area. At the hearing attorney Lieberman informed the court that if Mr. Scheps had followed legal advice to go into bankruptcy

when his businesses ran into insurmountable economic problems, he would have avoided business irregularities which culminated in a multitude of criminal charges brought against him in both state and federal courts involving 1,100 counts on various deceptive business practices surrounding the failure of the two companies in 1983.

During and following the time Mr. Scheps' problems began, he was represented by his personal attorney, Eugene H. Farber, Esquire, now deceased. Although Mr. Farber was engaged primarily in civil practice he represented Mr. Scheps' corporate codefendants in the state prosecutions. In federal court Mr. Scheps was represented by Theodore V. Wells, Esquire, a New Jersey lawyer. Mr. Wells was of the opinion he would be in conflict of interest if he were also to represent Mr. Scheps in the federal cases, and so, he recommended Mr. Alan M. Lieberman, a member of a Philadelphia law firm and the appellant here, as one who would be capable of representing Mr. Scheps in the charges brought against him. Mr. Farber, Mr. Scheps' personal attorney, asked Mr. Lieberman to represent Mr. Scheps. Fee arrangements approved by Mr. Scheps called for a $20,000 retainer against the final bill and prompt payment of fees and expenses upon submission. Mr. Lieberman agreed to be Mr. Scheps counsel based on the firm promise that he, as a member of a law firm, would be paid promptly and regularly all fees and expenses as they came due. Mr. Farber, Mr. Scheps' personal attorney, bolstered this understanding with a promise that he would personally see that Mr. Lieberman was paid for his fees and expenses promptly. Before entering his appearance for Mr. Scheps, Mr. Lieberman evaluated the work to be done in the state cases. Part of that work was engaging in conversations and a conference with Deputy Attorney General Charles P. Mackin and his staff regarding a plea bargain arrangement. After such conference, Mr. Lieberman determined that a plea bargain arrangement could be agreed upon which would provide for a sentence to be imposed upon Mr. Scheps which would run concurrent to a federal sentence if the federal sentence was for five years or more imprison-

ment. With this prospect, Mr. Lieberman concluded that a long trial could be prevented and he then entered his appearance as counsel for Mr. Scheps.

Because of the widespread publicity in the media in the Wyoming County and adjoining areas regarding the charges made against Mr. Scheps, Mr. Lieberman was compelled to file motions for change of venue or venire and individually sequestered voir dire all of which motions were denied by the lower court despite the fact that the Commonwealth urged the judge to grant at least a change of venire. A motion for the recusal of the lower court was also denied. All of these motions and one seeking review of the trial court's refusal to consider a plea agreement came before this court in petitions for review and we affirmed the lower court on jurisdictional grounds. A petition for allowance of appeal on these issues is currently pending before the Supreme Court of Pennsylvania.

## THE PETITION FOR WITHDRAWAL

Mr. Lieberman worked very diligently and continuously in his representation of Mr. Scheps. He encountered substantial and unexpected expenditure of time in working out a plea bargain agreement which turned out to be more difficult than either he or the Attorney General's office had contemplated, the result of which compelled Mr. Lieberman to seek assistance from other lawyers in his firm. Despite the difficulty in working out the plea bargain agreement, Mr. Lieberman did not cease his other efforts on behalf of Mr. Scheps, namely the filing of various motions, briefs and memoranda. When the plea agreement was reached between Mr. Lieberman and the Attorney General's office, it was presented to the lower court for a hearing. However, the lower court refused to entertain the plea under Pa.R. Crim.P. 319, giving as its reason, Mr. Scheps' right under 319 to withdraw his plea in the event the judge did not accept the arrangement between Mr. Scheps and the Commonwealth.

In order to determine the nature of the criminal charges filed against Mr. Scheps, Mr. Lieberman filed motions for discovery and for a bill of particulars which, at the time of the withdrawal hearing, had not yet been answered by the Commonwealth since these motions were stayed pending efforts to resolve the plea bargain agreement. In the summer of 1985, it became apparent that Mr. Scheps would be unable to pay Mr. Lieberman his present unpaid fees which amounted to $6,000 above the original retainer and would be unable to pay fees for future services which were estimated to be in the area of $150,000, in trying a case that would take 2-3 months, at least, to complete, according to Mr. Lieberman's testimony. On February 18, 1986, Mr. Lieberman informed Mr. Scheps of his intention to file a petition for leave to withdraw and on March 17, 1986, he did so file. Mr. Lieberman simultaneously forwarded to Mr. Scheps copies of all motions, briefs and memoranda which he had filed or prepared in the case so that Mr. Scheps would be current with what had happened up to the time the petition to withdraw was filed. At the hearing on the petition for leave to withdraw, it was learned that Mr. Scheps had $13 million worth of judgments against him and that he owed the United States government $1 million in taxes and penalties at the rate of $120,000 per year in interest. All of his assets have been liquidated and even his home has been pledged as collateral for the debts. Prior to the lower court's hearing on Mr. Lieberman's petition for leave to withdraw, the court fixed May 5, 1986, as a date for trial on 6 counts of the 1,100 counts charged against Mr. Scheps. Of great significance is Mr. Scheps' testimony regarding his discharge of Mr. Lieberman as his attorney which we will discuss later in this opinion.

To this point, the question to be decided is whether or not the learned court abused its discretion in denying counsel's petition for leave to withdraw from Mr. Scheps' case. *Phoenix Mutual Life Insurance Co. v. Radcliffe on the Delaware, Inc.*, 439 Pa. 159, 266 A.2d 698 (1970); *C.E. Williams Co. v. Pancoast*, 412 Pa. 166, 194 A.2d 189 (1963).

There are circumstances which arise in a given case that make it mandatory for a court to permit counsel to withdraw from representation of his or her client. In accordance with the provisions of the Pennsylvania Code of Professional Responsibility (The "Code") adopted by our Supreme Court pursuant to its authority to promulgate rules regulating the practice of law (Pa. Const. Art. V, Section 10(c)), these "Disciplinary Rules", unlike the Ethical Considerations, are mandatory in character. *See Preamble to the Code. See Commonwealth v. Wolfe*, 301 Pa.Superior Ct. 187, 195–96 n. 7, 447 A.2d 305, 309, n. 7 (1982).

DR 2–110 provides, in relevant part:

(A) In general.

(1) If permission for withdrawal from employment is required by the rules of a tribunal, a lawyer shall not withdraw from employment in a proceeding before the tribunal without its permission.

(B) Mandatory withdrawal.

A lawyer representing a client before a tribunal, with its permission if required by its rules, *shall withdraw* from employment, and a lawyer representing a client in other matters shall withdraw from employment if:

(1) He knows or it is obvious that his client is bringing the legal action, conducting the defense, or asserting a position in the litigation, or is otherwise having steps taken for him, merely for the purpose of harassing or maliciously injuring any person.

(2) He knows or it is obvious that his continued employment will result in violation of a Disciplinary Rule.

(3) His mental or physical condition renders it unreasonably difficult for him to carry out the employment effectively.

(4) He is discharged by his client.

Thus, under DR 2–110(B)(4) where a client dismisses his lawyer, it is mandatory that the lower court grant permission for leave to withdraw. Otherwise, to leave the mandatory withdrawal section of DR 2–110, covering the four instances where withdrawal upon petition is mandatory

to the discretion of the lower court would mean that such court could compel a lawyer to continue to represent his client even though he faced disciplinary measures under (B)(2), *supra*. This, we are of the opinion, was not intended by the rules. In the instant case, since Mr. Scheps discharged his lawyer, this action came within the ambit of the mandatory withdrawal rule and Mr. Lieberman should have been given permission to withdraw. Furthermore, there is a plethora of cases that hold that a client may discharge an attorney with or without cause. In *United States v. Thomas*, 450 F.2d 1355 (D.C.Cir.1971) the Court stated: "Many years ago this court held, 'It is settled law that a client, with an order of court, has a right to discharge an attorney with or without cause'". (citation omitted.)". In *McDonnell v. Tabah*, 297 F.2d 731, 733 (2nd Cir.1961) the court said, "While it is quite true that, under certain circumstances, counsel cannot be relieved without permission of the court (citations omitted) there is no requirement of law or common sense that a court can compel counsel to continue to represent a former client where there has been a termination of the attorney-client relationship before trial by mutual consent."

█ In *Fluhr v. Roberts*, 463 F.Supp. 745 (W.D.Ky.1979), a prison inmate filed suit against the local county government seeking return of confiscated goods and for better medical, library, laundry and recreational treatment. The inmate's counsel filed a motion for withdrawal citing irreconcilable differences between himself and the inmate client. The inmate substantiated these differences by requesting counsel's removal. There the court said: "It is clear that the attorney-client relationship may always be terminated by the client with or without cause ... In the instant case, good cause has been shown by a mutual desire that Mr. Clay be relieved of his court-appointed duty. Therefore, the motion to withdraw as counsel will be granted." *Id.* at 747. *See Sundheim v. Beaver County Building and Loan Association*, 140 Pa.Superior Ct. 529, 14 A.2d 349 (1940); *Nowell v. Dick*, 413 F.2d 1204 (5th Cir.1969). And so it

appears to be generally agreed that a client may, at any time, terminate the relation of attorney-client with or without cause. *See Potts v. Mitchell,* 410 F.Supp. 1278 (W.D.N.C.1976). This right of a client to terminate the attorney-client relationship is an implied term of every contract of employment of counsel, at least where the attorney has no vested interest, in some way, in the case or its subject matter. This right of the client is necessary in view of the confidential attorney-client relationship and the evil that would result from friction, personal strife, and lack of diligent effort on the part of counsel to the serious detriment of a client or upon mutual termination of the relationship.

■ Insofar as the mandatory nature of DR 2–110(B) is concerned, we would find that the lower court erred in denying Mr. Lieberman's motion for leave to withdraw.

In light of the trial court's reasons for its ruling in this case, we must decide if DR 2–110(C) of the Disciplinary Rules in any way so modifies the mandatory direction of DR 2–110(B), *supra,* so as to give the lower court discretion to deny the petition for leave to withdraw in this case. We are of the opinion that it does not.

DR 2–110(C) provides:

(C) Permissive withdrawal.

If DR 2–11–(B) is not applicable, a lawyer may not request permission to withdraw in matters pending before a tribunal, and may not withdraw in other matters, unless such request or such withdrawal is because:

(1) His client:

(a) Insists upon presenting a claim or defense that is not warranted under existing law and cannot be supported by good faith argument for an extension, modification, or reversal of existing law.

(b) Personally seeks to pursue an illegal course of conduct.

(c) Insists that the lawyer pursue a course of conduct that is illegal or that is prohibited under the Disciplinary Rules.

(d) By other conduct renders it unreasonably difficult for the lawyer to carry out his employment effectively.

(e) Insists, in a matter not pending before a tribunal, that the lawyer engage in conduct that is contrary to the judgment and advice of the lawyer but not prohibited under the Disciplinary Rules.

(f) Deliberately disregards an agreement or obligation to the lawyer as to expenses or fees.

(2) His continued employment is likely to result in a violation of a Disciplinary Rule.

(3) His inability to work with co-counsel indicates that the best interest of the client likely will be served by withdrawal.

(4) His mental or physical condition renders it difficult for him to carry out the employment effectively.

(5) His client knowingly and freely assents to termination of his employment.

(6) He believes in good faith, in a proceeding pending before a tribunal, that the tribunal will find the existence of other good cause for withdrawal.

Thus, with the exception of these circumstances contemplated in DR 2–110(B) *supra* (Mandatory withdrawal) the matter of withdrawal is traditionally within the discretion of the trial court judge. There are no prophylactic rules which exist when determining whether a denial or withdrawal amounts to an abuse of discretion. Each case must be decided by balancing the competing interest giving due regard to the facts presented. *Commonwealth v. Simpson*, 222 Pa.Superior Ct. 296, 294 A.2d 805 (1972). As in the case of the denial for a petition for a continuance to obtain new counsel, there are no mechanical tests for deciding when a denial of a petition to withdraw as counsel is so arbitrary so as to be an abuse of discretion. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at

the time the request is denied. *Ungar v. Sarafite,* 376 U.S. 575, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964). It is traditionally the balancing test that determines the weight to be given to the interest of the defendant to have a fair trial and the interest of the Commonwealth to an efficient administration of justice. *Moore v. Jamieson,* 451 Pa. 299, 306 A.2d 283 (1973). Not every denial of a request to withdraw as counsel offends the exercise of the discretion standard. However, "as in the case of a defendant's request for additional time in order to procure counsel, ... a myopic insistence upon expeditiousness in the face of a justifiable request for delay" can render the right of a defendant a mere formality. *Commonwealth v. Atkins,* 233 Pa.Superior Ct. 202, 207–208, 336 A.2d 368, 371 (1975). The same, of course, is true when considering a petition for leave to withdraw.

In *Brown v. Pennsylvania Railroad,* 435 Pa. 84, 87, 255 A.2d 554, 555 (1969) the court said: "We believe that sometimes too little consideration is given to the rights and privileges of an attorney at law to represent clients of his choice and to terminate a lawyer-client representation when he desires, provided it will not unjustly prejudice the rights of his clients," *citing Swedloff v. Philadelphia Transportation Company,* 409 Pa. 382, 187 A.2d 152 (1963). Permitting counsel's withdrawal when he has good grounds to do so together with his client's permission to do so and in the absence of any real prejudice to the client or to the Commonwealth is entirely justifiable. In *Brown, supra,* the lower court denied withdrawal and the Pennsylvania Supreme Court reversed.

The right to counsel is a personal right and is waivable if the waiver is valid and effective if competently and intelligently made taking into consideration the specific circumstances of a case, since each case must be considered on its specific factual background. *See Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Commonwealth ex rel. McCray v. Rundle,* 415 Pa. 65, 202 A.2d 303 (1964); *Commonwealth ex rel. O'Lock v. Rundle,* 415 Pa.

515, 204 A.2d 439 (1964). A client has a right to dismiss counsel so long as it does not delay the judicial process unreasonably or is not made in bad faith. *Commonwealth v. Atkins, supra; Commonwealth v. Ross*, 465 Pa. 421, 350 A.2d 836 (1976). An attorney must take reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivery to client of all papers and property to which the client is entitled and complying with applicable laws and rules. When asked if his withdrawal from the case would in any way jeopardize his client's interest, Mr. Lieberman testified that a substituted attorney would not be in a less advantageous position to try the case then was Mr. Lieberman. He stated: "... I—I don't—not appreciably worse at at all. I think that an attorney substituted for us would, would have close to the same learning curve and discovery and motion time that we would require to try the case." Deputy Attorney General Mackin, when asked by the lower court to comment on Mr. Lieberman's request for leave to withdraw, stated:

Yes, your Honor, if I may, sir. Your Honor, this is a sticky position for the Commonwealth to be in, in as far as the Commonwealth really has no desire one way or the other as to who represents Mr. Scheps. Mr. Scheps is entitled to counsel of his own choosing. So, therefore, we don't really, we would have no position as to who represents Mr. Scheps, be it public defender, or be it Mr. Lieberman. However, we feel that in the memorandum in support of the motion to withdraw that has been filed, we feel it isn't improper to characterize Mr. Scheps' failure to pay as deliberate. We think that testimony has been brought out today that it is not deliberate, it is just that he does not have the wherewithall to pay, and under the disciplinary rules, a permissive withdrawal is allowed, if there is a deliberate disregard of a fee arrangement. And we don't feel that Mr. Scheps had deliberately disregarded it. But as I said, now confronted with Mr. Scheps' desire not to go forward with Mr. Lieberman, I don't know if that is tantamount to a discharge. If a

client discharges an attorney, I believe the disciplinary rules are clear that that is a mandatory withdrawal situation. But I'm not too certain as to whether or not the testimony from Mr. Scheps actually would amount to a discharge. On the other hand, the Commonwealth also recognizes its duty to the citizens of the Commonwealth to move forward with this case. And I, I think I can be granted this leeway, I do disagree with Mr. Lieberman in that he feels that a new lawyer would be starting off even where Mr. Lieberman is. I feel that Mr. Lieberman, although perhaps he's not ready for trial of this case, has certainly through the process of, at the minimum, osmosis, learned some of the facts, who the witnesses are, and I think perhaps Mr. Lieberman is selling himself short. I think he knows quite a bit about this case. That would be my opinion, your Honor. Thank you, sir.

The Attorney General's comments certainly do not amount to any substantial objection to Mr. Lieberman's request for leave to withdraw.

When asked why he was discharging his lawyer, Mr. Scheps testified at the hearing as follows: "... I—cannot in good conscience continue to ask Mr. Lieberman or his firm to continue as my counsel now that there'll be additional debts of over $100,000 and absolutely no way that I will be able to pay them." Mr. Scheps testified that he was not dissatisfied with Mr. Lieberman because he had done a 'decent job.' "

In answer to the Attorney General's question as to why he was discharging his lawyer, Mr. Scheps answered:

"Yes, if I could explain. Originally I didn't know it was going to take this much money and this much time, and I cannot continue to allow a man, who I am sure it is going to affect his career in his company, to continue to go deeper in debt. I, you know, there is no way. In the beginning I thought I would be able to pay him. Gene Farber, [Mr. Scheps' personal counsel] who was a friend of mine, assured me that he would help me, as his firm made more money, and so in the beginning I thought I

would be able to. There would be no problem. We didn't think we were going to go into this again, this size of a situation. So now I know it is impossible, I mean it is just an impossible task for me to pay him. If I made a quarter of a million dollars a year, I could never pay him, because the government would take their share and then there would be all the liens against me. So there is absolutely no way I could ever make enough money to pay him, or anybody."

■ The lower court refused Mr. Lieberman's request to withdraw on the grounds that Mr. Scheps' discharge of Mr. Lieberman was not deliberate as required by DR 2–110(C)(1)(f) which holds that a lawyer may request permission to withdraw when his client "Deliberately disregards an agreement or obligation to the lawyer as to expenses or fees." This term "deliberate" has not been interpreted or construed in any decision and, to say the least, it is an obtuse term in considering the totality of the circumstances having to do with the attorney-client relationship. The term "deliberate", in our opinion, in the context of an attorney-client relationship does not necessarily mean that it has to be done with vindictiveness or in an inimical sense so long as it is intelligent, voluntary, and with a full understanding as to what the discharge means. In construing the word "deliberate", the lower court ignores the provisions of DR 2–110(C)(5) and (6), which by the clarity of the language clearly override the nebulous, imprecise and unclear meaning of the word "deliberate". In this case Mr. Scheps discharge was clearly intelligently and voluntarily made.[1]

1. Although we do not address the issue, it is unfortunate that the lower court did not at least entertain the plea bargain arrangement. In the case of *Commonwealth v. Fazenbaker,* 248 Pa.Superior Ct. 433, 375 A.2d 175 (1977) Judge Spaeth went into detailed procedure that a lower court should follow when a plea bargain arrangement is presented. We feel that in the context of that opinion there was an obligation of the lower court to at least entertain the plea and if he decided not to accept the plea bargain arrangement he could notify the defendant at which time the defendant could withdraw the plea. *Id.;* Rule 319. But this matter is currently the subject of a petition for allowance of appeal now pending before the Pennsylvania Supreme Court and is not our concern here.

Most of the cases cited by the Commonwealth are not helpful since they either decide the affect which a general appearance by counsel has on a court's jurisdiction over a person of a client or relate to untimely requests for continuances in order for a defendant to retain an attorney of his choice.

At the time of the withdrawal hearing, this case was not ready for trial; motions on discovery and for a bill of particulars had not yet been answered by the Commonwealth; the Commonwealth had not presented substantial information regarding any delay that would jeopardize the efficient administration of justice, and, in fact, agreed with the defendant's motion for a change of venire because of the widespread publicity given to the case. The lower court erred in misconstruing the effect of Mr. Scheps' discharge of his attorney. It erred in holding that the petition for leave to withdraw was untimely filed because the court scheduled six of the 1,100 counts against Mr. Scheps for trial. Even as to those six counts, motions on discovery and for a bill of particulars had not yet been answered by the Commonwealth. Furthermore, the scheduling of 6 counts out of 1,100 counts does not equate with the scheduling of a full trial involving the remaining 1,964 counts which it is estimated will take at least 2–3 months to complete. The lower court did not take into account the inordinate burden which it placed called upon Mr. Lieberman to carry out when his representation was predicated upon a firm promise that all his fees would be paid promptly. Up to the time of the hearing Mr. Lieberman had not delayed the judicial process nor filed the petition for leave to withdraw in bad faith. *Commonwealth v. Ross, supra, Commonwealth v. Atkins, supra, Phoenix Mutual Life Insurance Company v. Radcliff on the Delaware, supra.*

 Where a lawyer has conscientiously represented his client and has not left him without time to prepare his case for trial or to procure other counsel for such trial, his petition for withdrawal is not made in bad faith. And where said client made in bad faith owes past legal fees of a

substantial amount and is not in a position to pay for future legal fees for a protracted trial, there is no reason to deny an attorney's petition for leave to withdraw. Finally, when the client himself discharges his attorney, as Mr. Scheps did in this case, the relationship of attorney-client is terminated. The court's denial of Mr. Lieberman's petition imposes a punishment resulting in the risk of detriment to his career, let alone substantial financial losses. It should not be permitted. After all, it is the client's responsibility and not the attorney's to pay for the heavy costs of trial. *Commonwealth v. Novak*, 395 Pa. 199, 213, 150 A.2d 102, 109 (1959). In light of the foregoing circumstances, the lower court erred in not allowing counsel to withdraw from this case and we remand for purposes consistent with this opinion. Jurisdiction relinquished.

WIEAND, J. filed a concurring and dissenting opinion.

OLSZEWSKI, J., filed a dissenting opinion.

WIEAND, Judge, concurring and dissenting opinion:

I concur in the result achieved by Judge Cercone and join that portion of his opinion which determines that the trial court abused its discretion when, under the peculiar circumstances of this case, it denied counsel's request for leave to withdraw his appearance as counsel for the defendant.

However, I disagree with the conclusion expressed by Judge Cercone, as well as by Judge Olszewski, that Disciplinary Rule 2–110(B) makes it mandatory that a trial court grant permission for counsel to withdraw under the circumstances there enumerated. In my opinion, Rule 2–110(B) has application only to counsel; it was not intended to deprive trial courts of discretion in determining whether to grant or withhold permission to counsel to withdraw under the circumstances of each particular case. Trial courts are governed by rules adopted by the Supreme Court; and Pa.R.Crim.P. 302(b) provides that "[c]ounsel for a defendant may not withdraw his appearance except by leave of court."

This rule vests discretion in trial courts, to be exercised as the "interests of justice" require.

In the instant case, I would hold that the "interests of justice" can better be served by permitting appellant-counsel to withdraw so that the defendant-client can be represented by other counsel whose loyalty will not be impaired by the defendant-client's inability to pay a substantial fee.

OLSZEWSKI, Judge, dissenting opinion:

Although neither party raises the issue, I note that this is a final, appealable order, and thus, jurisdiction is properly before this Court. *See Brown v. Pennsylvania Railroad*, 435 Pa. 84, 255 A.2d 554 (1969). As for the merits of this appeal, I respectfully dissent. The majority finds that withdrawal is authorized pursuant to both the mandatory provision of DR 2–110(B)(4) and the permissive provision of DR 2–110(C)(1)(f). In my view, neither provision is supportive of a grant of withdrawal under the peculiar facts of this case. A chronological review of those facts is particularly instructive.

In October of 1984, Mr. Lieberman was asked to represent Mr. Scheps. The fee arrangement agreed upon called for the payment of a $20,000 retainer against the final bill and the payment of monthly bills upon submission.[1] Mr. Lieberman acknowledges that before entering his appearance for Mr. Scheps, he evaluated the work to be done and spoke with representatives of the attorney general's office. In his own words, Mr. Lieberman "concluded that there was little danger that there would be substantial lawyer time required in dealing with the state charges." (Notes of Hearing 4/25/86 12–13, R.R. 28a–29a). Mr. Lieberman also acknowledges that he became involved with Mr. Schep's case "only because of the assurances of the members of the attorney general's office that a plea agreement could be reached" and because Mr. Schep's personal attorney, Mr.

---

**1.** The fee agreement was not made part of the record. Neither party disputes the terms of the agreement as recalled by Mr. Lieberman in his testimony at a hearing on this matter.

Farber, gave him a personal assurance the legal bill would be paid. (*Id.* at 3, R.R. 7a).

Mr. Lieberman's expectation that a plea agreement would dispose of this case proved to be erroneous; on October 2, 1985, the trial court refused to accept the proposed plea much to the surprise of both the defense and the Commonwealth. Mr. Lieberman continued, however, to diligently and expertly represent Mr. Scheps before the trial court as well as before this Court and the Supreme Court of Pennsylvania.

In the meantime, Mr. Lieberman learned that his client had become insolvent. Mr. Scheps and his personal attorney, Mr. Farber, continued, nevertheless, to give their assurances that the legal bills would be paid.

Mr. Farber met an untimely death on February 28, 1986. Coincidentally, Mr. Lieberman informed Mr. Scheps that same day that he would seek to withdraw from the case.

On March 18, 1986, Mr. Lieberman filed a motion to withdraw citing two grounds: (1) difficulty in dealing with Mr. Scheps, both as a result of his failure to pay the fees owed, and in view of the death of Mr. Farber who acted as an intermediary;[2] and (2) Mr. Scheps' inability to pay the legal fees. At the hearing held on this matter a new and different ground for withdrawal appeared to arise. When questioned as to his feelings on this motion, Mr. Scheps testified as follows:

Q. Just one last question. Do you wish to continue to proceed with Mr. Lieberman?

A. No, I do not. I—I cannot in good conscience continue to ask Mr. Lieberman or his firm to continue as my counsel, knowing that there'll be additional debts of over a hundred thousand dollars, and absolutely no way that I'll ever be able to pay them.

Q. Now, Mr. Scheps, you're not dissatisfied with the representation that Mr. Lieberman has provided you are you?

2. Mr. Lieberman has abandoned this first ground on appeal.

A. No. I think he's done a decent job. I'm not dissatisfied.

Q. No complaints with his legal workmanship?

A. No.

Q. Your main concern is that you will be unable to pay him, well, first of all, for past services rendered, and for anything in the future, is that correct?

A. That's my main concern, yes.

Q. And that is why you do not wish to go forward with him?

A. Yes, if I could explain. Originally I didn't know it was going to take this much money and this much time, and I cannot continue to allow a man, who I am sure it is going to affect his career in his company, to continue to go deeper in debt. I, you know, there is no way. In the beginning I thought I would be able to pay him. Gene Farber, who was a friend of mine, assured me that he would help me, as his firm made more money, and so in the beginning I thought I would be able to. There would be no problem. We didn't think we were going to go into this again, this size of a situation. So now I know it is impossible, I mean it is just an impossible task for me to pay him. If I made a quarter of a million dollars a year, I could never pay him, because the government would take their share and then there would be all the liens against me. So there is absolutely no way I could ever make enough money to pay him, or anybody.

(Notes of hearing 42–44, R.R. 58a–60a). Following this testimony, counsel for the Commonwealth noted that it was not entirely clear on the record that Mr. Lieberman had been, in fact, discharged by Mr. Scheps. As a result, Mr. Scheps was recalled to the witness stand and asked one question:

Q. Mr. Scheps, do you discharge Mr. Lieberman?

A. Yes, I do.

(Notes of hearing 51, R.R. 67a). Hence, the discharge of counsel claim did not arise as a basis for withdrawal until the hearing on counsel's motion.

I agree with the majority that when counsel is discharged, the court must grant permission for leave to withdraw. DR 2-110(B)(4). Because of the nature of the confidential relationship between client and counsel, the client may discharge counsel with or even without cause. 7 Am.Jur.2d *Attorneys at Law* Sec. 168 (1980). Common sense and experience teach us, however, that even where the discharge is without cause, the client has acted because of discontent, distrust, or other motives which reveal a breakdown in the attorney-client relationship. Such is not the case here. In view of the testimony and the sequence of events giving rise to this case, in particular, the fact that Mr. Lieberman was not "discharged" until after the withdrawal motion was filed, it becomes obvious that this is not a case where the client severed the attorney-client relationship. There was no breakdown of the attorney-client relationship; Mr. Scheps testified that he was satisfied with Mr. Lieberman's performance. It takes no stretch of the imagination to see that Mr. Scheps was placed in the untenable position of "discharging" his counsel only when questioned at a hearing on the motion and did so only because of financial constraints. I would not permit such economic arm-twisting to be used as the basis for turning a motion for permission to withdraw into one based upon the mandatory withdrawal provisions. I would, therefore, find that the mandatory withdrawal provision, DR 2-110(B)(4), is simply inapplicable.

Nor do I believe that a basis exists for the grant of permissive withdrawal. The reason advanced by appellant—the inability to pay the legal fees—is, beyond doubt, the motivating factor in Mr. Lieberman's desire to withdraw. The Code of Professional Responsibility permits withdrawal of counsel where the client "deliberately disregards" an agreement or obligation as to counsel's fees or expenses. DR 2-110(C)(1)(f). To date, Mr. Scheps has

made payments totaling $30,000; an initial payment of $20,000 and a second payment of $10,000. In comparison, Mr. Lieberman claims he has billed over $80,000 in fees and $6,000 in disbursements. Mr. Scheps testified that he is unable to pay the sums owed; all of his property is mortgaged and approximately $13 million in liens have been filed against him.

Given Mr. Scheps financial plight subsequent to entering the fee agreement with Mr. Lieberman, I cannot say that he deliberately[3] disregarded his obligations; it was simply impossible for him to make any payment. Thus, I would find no abuse of discretion in the court's refusal to permit Mr. Lieberman to withdraw from the case pursuant to DR 2–110(C)(1)(f).

A review of the Ethical Considerations and Disciplinary Rules accompanying Canon 2—Withdrawal of Counsel, indicates that all the rules and principles regarding the right of an attorney to withdraw are geared toward protecting three interests: the legal rights of the client, the attorney's interests in receiving fair treatment by the client, and the integrity of the judicial system. I believe that by permitting counsel to withdraw, the majority elevates the attorney's interest in being compensated over the interests of the client and the judicial system.

Because a defendant holds a qualified right to representation by counsel of choice, this case has constitutional underpinnings. As noted above, Mr. Scheps has no quarrel with the performance of his retained counsel. Mr. Lieberman has already received a substantial retainer. His client, on the other hand, faces in excess of 1,000 counts against him; the trial promises to be both lengthy and complicated. Permitting the withdrawal of counsel who, at this time, is both extremely intimate with the intricacies of this case and

---

3. An act is "deliberate" where it results from careful and thorough consideration or is characterized by an awareness of the consequences. Websters New Collegiate Dictionary at 297 (1980). I cannot conclude that Mr. Scheps carefully pondered before deciding not to pay the legal fees. He simply could not do so.

well-equipped to handle such a complex trial, would elevate counsel's right to be treated fairly over the client's right to counsel of choice. In addition, withdrawal would unnecessarily impede the efficient administration of justice.[4]

This is not to say, however, that counsel is not entitled to compensation. As a general rule, an attorney is not obligated to render legal services for those unable to make payment in the absence of a court appointment. *See* EC 2–26. I am not so naive as to be blinded from the real-life fact that attorneys must earn a livelihood; I also suspect few clients enlist the aid of private counsel with the expectation that representation will be given free of charge. *See* EC 2–16, EC 2–17. However, once an attorney agrees to represent a client, counsel implicitly agrees to proceed on the client's behalf to the conclusion of the matter. 7 Am.Jur.2d *Attorneys at Law* Sec. 173 (1980). *See* EC 2–31, EC 2–32. In this case, however, Mr. Lieberman—a partner in a prominent firm—conducted a thorough investigation before agreeing to represent Mr. Scheps. Although he entered his appearance in this case and accepted a retainer expecting the court's acceptance a plea agreement, he should have been cognizant of the possibility that the plea would be rejected and the case scheduled for trial.[5] Mr. Lieberman has already undertaken his obligations to his client; those obligations should not cease merely because the case became more complicated or no longer is as profitable as originally contemplated. I would, therefore, affirm the trial court's denial of the motion to withdraw.

**4.** We note that the motion to withdraw was filed in March of 1986 and trial was set to begin on May 5, 1986. Although Mr. Scheps has waived his right to a speedy trial, both the court and society have an interest in the efficient and expeditious administration of justice.

**5.** Throughout the course of argument in this matter, Mr. Lieberman makes repeated reference to the assurances of payment made by Mr. Farber. The payment of legal fees from one other than the client is prohibited except with the consent of the client after full disclosure. DR 5–107(A), (B). *See* EC 5–21, EC 5–22, EC 5–23. Since Mr. Farber is deceased, I need not determine the propriety of such assurances. I note, however, that the absence of an assurance of payment is undoubtedly significant in the present action.