**In re Estate of Cheney**

104

C.P. of Bucks County, no. 59617.

*Robert L. Adshead* and *Darryl A. Irwin,* for appellant Daniel.
*John Kenney,* for Ms. Cheney.

SOKOLOVE, *S.J.,* August 16, 1996—Juliette Daniel, executrix of the estate of Walter H. Cheney, deceased, has filed an appeal to the Pennsylvania Superior Court from our final decree of June 6, 1996. By that decree we held that the decedent's last will and testament, which had been admitted to probate by the Register of Wills of Bucks County, was modified pursuant to

20 Pa.C.S. §2507(3) by the decedent's later marriage. We, therefore, awarded the decedent's estate to his widow as his sole intestate heir and directed the executrix to deliver the decedent's estate to the widow's attorney and to file an account of her administration of the decedent's estate. We will explain the history of this simple but unduly extenuated matter and the reasons for our decree.

The decedent died on April 5, 1993. On June 4, 1993 the register granted letters testamentary to Juliette Daniel and admitted to probate the decedent's last will and testament, dated December 18, 1989. The card of attorney Darryl A. Irwin is stapled to the register's decree granting the letters.

On September 28, 1994, the executrix, Juliette Daniel, represented by Mr. Irwin, filed two petitions with the orphans' court. Both petitions requested citations directed to Geraldine Ida Cheney. One petition asked the court to void certain financial transactions allegedly made by or on behalf of the decedent in favor of Ms. Cheney while the decedent was demented. The second petition, verified by the executrix and Mr. Irwin, sought Ms. Cheney's surrender to the executrix of real property owned by the decedent. Paragraph 7 of the second petition stated that, "Respondent, who was married to decedent Walter H. Cheney at the time of his death, is aware of the intention of the executrix to sell the said real property pursuant to the terms of paragraph SECOND of the above-referenced last will and testament of Walter H. Cheney."

Pursuant to our preliminary decrees, citations were awarded on the executrix' two petitions. Ms. Cheney answered the petitions on October 13, 1994, alleging in new matter to the petition for possession of real estate that since her December 3, 1990 marriage to

the decedent post-dated his will, under 20 Pa.C.S. §2507(3), she was entitled to his entire estate as his sole intestate heir. Ms. Cheney's answer to the other petition contained a portion improperly designated a "cross claim."[1] This "cross claim" sought recognition for Ms. Cheney as the decedent's surviving spouse and a decree distributing the decedent's estate to her, as well as an accounting by the executrix of her administration.

On October 20, 1994, Ms. Cheney filed a separate petition seeking the same relief requested in the "cross claim," namely the modification of the will under 20 Pa.C.S. §2507(3) by reason of the later marriage, the distribution of the decedent's entire estate to her as the sole intestate heir and the filing of an account by the executrix. A citation was issued on this petition, directed to the executrix and returnable at the hearing previously scheduled for the executrix' petitions on November 3, 1994.

Mr. Irwin appeared for the executrix at the November 3, 1994 hearing. We recognized then that our decision on Ms. Cheney's petition could moot the executrix' petitions and would logically be heard first. Because the executrix had not been given sufficient time to respond to that petition, we allowed her additional time. We directed, with the parties' agreement, that they account to each other for the decedent's assets held by them respectively. Ms. Cheney agreed to prepare her account within 30 days, and the executrix agreed to prepare her account within 45 days. Ms. Cheney also

---

1. Perhaps this was meant to be a counterclaim. Bucks O.C. Rule 3.2A limits responsive pleadings to an answer, new matter and preliminary objections. Neither a cross claim nor a counterclaim is a permitted pleading in our court.

agreed, pending further hearing, that she would not sell the decedent's real estate, where she continued to reside, and that the disputed funds would be preserved or that she would fully account for their use.

The executrix never filed an answer or reply to Ms. Cheney's petition, new matter or "cross claim." On May 10, 1995, Ms. Cheney moved for a hearing on her petition. Hearing was scheduled for June 26, 1995 but continued as the parties supposedly attempted to negotiate a compromise. Ms. Cheney again moved for a hearing on her petition on October 12, 1995. The hearing occurred on November 16, 1995.

Mr. Irwin appeared for the executrix at that hearing. Ms. Cheney introduced prima facie evidence of her entitlement to relief under 20 Pa.C.S. §2507(3). We reviewed the register's file, which held the decedent's original will, dated December 18, 1989. We also received a copy of the original marriage certificate of the decedent and Ms. Cheney (identified as "Ida Maddox") and the orphans' court division's certification of that marriage. Based upon this evidence, we held that Ms. Cheney had met her initial burden of proof to establish her marriage to the decedent after the execution of his last will and testament. Mr. Irwin, despite having had over a year to prepare, did not have his witnesses available to testify that day. We generously granted his request for a continuance to enable his client to prove that the documented marriage was invalid. We advised Mr. Irwin to file a motion for a new hearing date but also allowed Ms. Cheney's attorney to file for a hearing if Mr. Irwin failed to do so. Mr. Irwin indicated that he would be ready for a hearing in January.

Again, Mr. Irwin took no action. On February 1, 1996, Ms. Cheney's attorney filed for a hearing date. Hearing was scheduled for March 25, 1996. By order

of February 21, 1996, the March 25 hearing was continued until 10 a.m., April 11, 1996 because of the court's scheduling conflict. The file reflects that the February 21, 1996 order was sent to Mr. Irwin.

Beginning at 4:27 the afternoon of April 10, 1996, less than 18 hours before the scheduled hearing, Mr. Irwin sent a letter by facsimile transmission to the court. He had not communicated with the court, either formally or informally, since the November 16, 1995 hearing. The same letter was sent at 4:31 and 4:35 that afternoon as well. The letter stated the following:

"I am the attorney for executrix, Juliette Daniel and the attorney for the above captioned estate which has a hearing listed for Thursday, April 11, 1996, at 10 a.m., before this honorable court.

"Please be advised that I am the attorney for Mr. William C. Stout which is also listed for Thursday, April 11, 1996 in federal court.

"Therefore, I am unable to appear in your courtroom and I respectfully request that this matter be re-listed.

"I have indicated to my client Ms. Daniel that I am no longer representing her or the estate because of a conflict of interest.

"Kindly reschedule this matter to remove me as attorney of record.

"If you have any questions feel free to call me at your earliest possible convenience.

"Thank you for your anticipated kind and considerate handling of my requests."

We were unaware of Mr. Irwin's correspondence until Ms. Cheney's attorney presented us with a copy at the appointed hearing April 11, 1996. Of course, Mr. Irwin was not present and had not sent another attorney to cover for him. We denied his untimely request for

a continuance as well as his inappropriate effort to withdraw his appearance as attorney for the executrix.[2] We found that Ms. Cheney, as the decedent's widow, was entitled to his estate and instructed her attorney to submit a written order to be entered.

Some time after we had disposed of this matter and while our court was still in session, the executrix appeared. She had traveled from her residence in Georgia. Although she knew that Mr. Irwin would not attend the hearing, she did not appear to know of his alleged conflict of interest. We explained the result of the hearing to her, and she repeated several times that she would have to talk to "Darryl."

We entered the written order effectuating our findings at the April 11 hearing upon our return from vacation on June 6, 1996. Ms. Cheney's attorney submitted a proposed order on April 25, 1996, after our departure.

The executrix, in her concise statement of matters complained of on appeal, charges only that we abused our discretion or committed an error of law in refusing Mr. Irwin's request for a continuance because of his alleged conflict of interest. We may address these complaints very briefly. We have recounted this case's history in detail to emphasize the frivolity of the executrix' appeal.

The grant or refusal of a request for a continuance is within the discretion of the trial court, and only where such discretion has been abused will the refusal of a

2. Pa.R.C.P. 1012(b) requires an attorney to obtain leave of court to withdraw an appearance unless another attorney has entered or simultaneously enters an appearance and the change of attorneys does not delay any stage of the litigation. In our court, without an appearance by another attorney, an attorney must file a petition for leave to withdraw, with a rule to show cause entered upon his client and the other parties to the matter.

continuance be reversed. *Birdsall v. Carbon County Board of Assessment,* 168 Pa. Commw. 266, 272, 649 A.2d 740, 743 (1994), citing *Phoenix Mutual Life Insurance Co. v. Radcliffe on the Delaware Inc.,* 439 Pa. 159, 266 A.2d 698 (1970). Pa.R.C.P. 216(A), made applicable to the orphans' court by Pa. O.C. Rule 3.1, lists the following grounds for continuance: (1) agreement of all parties or their attorneys, if approved by the court; (2) illness of counsel of record, a material witness or a party; (3) inability to subpoena or take testimony by other means of a material witness; and (4) such special ground as may be allowed in the discretion of the court. Mr. Irwin's request for a continuance by reason of his appearance in federal court falls within the fourth category, *Swoyer v. PennDOT,* 142 Pa. Commw. 1, 599 A.2d 710 (1990), as does his second excuse of an unspecified conflict of interest.

In general, four factors are used to determine whether a continuance was properly denied: "(1) whether the delay prejudiced the opposing party; (2) whether opposing counsel was willing to continue the case; (3) the length of the delay requested; and (4) the complexities involved in presenting the case. *Birdsall, supra* at 272, 649 A.2d at 743, citing *Snyder v. Port Authority of Allegheny County,* 259 Pa. Super. 448, 393 A.2d 911 (1978). These factors all mitigate in favor of our rejection of the continuance in this matter.

The opposing party, Ms. Cheney, was prejudiced by any further delay. The decedent had been dead for three years, and her entitlement to his estate, including the house in which she lived, had been challenged throughout that time. She had been seeking a decision for almost a year and a half and had presented her case five months earlier, when the case should have been finished. Obviously, her attorney did not agree to a

further continuance. Mr. Irwin requested an indefinite delay, on top of the five months he had already received. The presentation of the case was far from complex. In fact, Mr. Irwin had outlined his case and the witnesses he intended to call at the November 16, 1995 hearing. N.T. 11/16/95, p. 21.

We note also that Pa.R.C.P. 216(c) provides that "[n]o application for a continuance shall be granted if based on a cause existing and known at the time of publication or prior call of the list unless the same is presented to the court at a time fixed by the court, which shall be at least one week before the first day of the trial period." If we extend this rule to our orphans' court practice, Mr. Irwin's request, late on the eve of the hearing, was clearly untimely. See *Feingold v. SEPTA,* 339 Pa. Super. 15, 488 A.2d 284 (1985), *affirmed,* 512 Pa. 567, 517 A.2d 1270 (1986). When he made his request, Mr. Irwin had represented the executrix in administering the decedent's estate for almost three years, had known of Ms. Cheney's outstanding claim and petition for some 18 months and had known of the exact hearing for six weeks. As the executrix appears to admit, Mr. Irwin's excuse, under these circumstances, based upon an engagement in another court is untenable.

His vague claim of a conflict of interest, proffered secondarily in a make-weight fashion, is even more implausible. Particularly in light of his three-year representation of the executrix, his appearance and discussion on her behalf for a year and a half at hearings involving the same issue and his knowledge of this hearing date for six weeks, his sudden conflict of interest, without explanation, is curious, to say the least. We believe that it was purely pretextual.

We recognize that an attorney's withdrawal from representation is mandatory if the representation will result

112

in a violation of the Rules of Professional Conduct or other law. Pa.R.C.P. 1.16(a)(1). See *Commonwealth v. Scheps,* 361 Pa. Super. 566, 523 A.2d 363 (1987). Rules 1.7 through 1.9 describe potential and prohibited conflict situations. We do not know what, if any, conflict existed here or even its general nature. Thus, we could not seriously weigh Mr. Irwin's throwaway allegation of a conflict with no reason given. Moreover, if Mr. Irwin truly had a conflict of interest in this matter, he certainly could have raised it much earlier and by proper motion.

Our denial of the continuance was well within our discretion and the purview of the law.